## Blum Brothers, Incorporated, *v.* Berg, Appellant.

*Deed—Covenant—Restriction on use of building—Injunction—Mandatory injunction—Remedy at law—Equity.*

1. Where the owner of a large building leases the upper stories thereof to the proprietors of a department store, and in the lease covenants that he will not break through, or suffer anyone else to break through the west wall of the building during the continuance of the lease, and subsequently after the death of the owner his executors sell the building to the proprietors of another department store who had already leased the lower floors and basement, and the deed recites that it is subject to the covenants contained in the lease of the upper floors, the grantees are bound by the covenants, and if they open an aperture through the west wall of the building in the basement, they will be restrained by injunction from committing any similar act in the future; but a mandatory injunction will not be awarded to compel them to close up the aperture if it appears that no actual injury was caused by the opening of the aperture, except the cost of filling it up which would be about $25.00.

2. In such a case the defendants cannot set up as a defense against a restraining injunction that the plaintiffs had made openings in the east wall of the upper floors of the building so as to connect these floors with another building also occupied by them, if it appears that the owner of the building in his lifetime, and before the occupancy of the defendants, had given permission for such openings to be made.

Argued Dec. 17, 1913. Appeal, No. 244, Oct. T., 1913, by defendants, from decree of C. P. No. 1, Phila. Co., June T., 1912, No. 1,137, on bill in equity in case of Blum Brothers, Incorporated, v. Max Berg and Adolph Berg, Individually and as Copartners, trading as Berg Brothers. Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ. Decree affirmed with modification.

Bill in equity for an injunction.

BRÉGY, P. J., filed the following adjudication:
From the bill, answer and proofs, I make the following

### FINDINGS OF FACT.

1. The plaintiff corporation occupies the entire building at the northwest corner of Tenth and Market streets, known as the Harrison building and being numbered 1001, 1003, 1005 Market street, and the third, fourth, fifth, sixth and seventh floors of the building known as the Dobson building and numbered 1007, 1009 and 1011 Market street.

2. The defendants occupy the first and second floors and basement of the Dobson building, and the entire building known as 1013 Market street.

3. Both the plaintiff and defendants are engaged in the same business, namely, that of keeping what is known as a department store.

4. The plaintiff occupies the portion mentioned of the Dobson building by virtue of an agreement entered into by John Dobson, the then owner, and the plaintiff, dated November 26, 1902.

5. That at the time of the making of this agreement the defendants were the occupants of the basement, first and second floors of the Dobson building and held under a lease from Dobson.

6. On August 14, 1911, the executors of John Dobson,

deceased, sold the property already alluded to as the Dobson building, to the defendants, Adolph and Max Berg, and executed and delivered a deed therefor.

The result being that since that date the defendants have been the owners of the whole building, but occupants of only the first and second floors and basement of it. The rest of the building the plaintiff occupies under its lease from Dobson.

7. The deed from the Dobson executors to the defendants contains the following language:

"Under and subject nevertheless to all the terms and conditions, covenants, renewals, rights and privileges contained in two certain leases in writing one thereof given and executed . . . . and the other thereof given and executed by the said John Dobson to Blum Brothers, Incorporated, bearing date the 26th of November, A. D. 1902, and recorded in said office in Deed Book W. S. V. No. 1458, page 493."

8. The agreement of November 26, 1902, contains, among other things, the following:

"The party of the first part" (that being Dobson) "agrees not to break through or suffer or permit to be broken through by any one at any time during the continuance of this lease, the west wall of the building to which this lease refers. This provision shall become null and void in the event that the party of the second part" (that is, Blum Brothers) "shall become the lessee of the basement, first and second floors of said building," being clause nine.

9. The eighth clause of the same agreement is in these words:

"The party of the second part may make changes, alterations, additions and improvements to the premises hereby demised. Provided however. . . . Neither shall the party of the second part (Blum Brothers) make any changes, alterations or improvements that will in any way interfere with, damage, molest or injure any of the other tenants of the building."

10. The defendants, after they became the owners of the building, caused an opening to be broken through on the west wall of the building 1007, 1009 and 1011 Market street, said opening being about seven feet high and six feet wide, and connects with the building 1013 Market street, occupied by the defendants.

The wall in which the opening was made is about 200 feet long and about eleven feet high.

11. John Dobson died on June 28, 1911.

12. After the plaintiffs took possession of their part of the Dobson building, and during the lifetime of John Dobson, and with his consent, they made several openings in the east wall of said building, connecting said portion with the premises 1001, 1003 and 1005 Market street, which they occupied entirely.

Said openings were made without the consent or authority of the defendants.

The making of the said openings in the east wall has caused an increase in the insurance rates that the defendants were required to pay, and the defendants have paid, in consequence of said openings, a larger amount annually to secure insurance than they otherwise would have been required to pay.

13. The opening made by the defendants has not caused the plaintiffs any increased insurance or any other expense.

14. The defendants offered the plaintiffs $10,000 per year if permission could be obtained to make a number of openings in the west wall. This offer was in a letter dated March 5, 1909.

Briefly restated—These are the facts I find—Dobson leased certain floors of his building to the plaintiffs. He agreed in that lease, that he would not break through any portion of the west wall of his building, or permit anyone else to do so, during the continuance of the said lease. This was recorded.

The defendants purchased the property from the Dobson estate and took the property subject to the said lease, it being expressly so recited in the deed.

They have broken through the west wall of the building, notwithstanding the agreement or covenant not to do so.

The plaintiffs, although their lease with Dobson prohibited them from making any changes that would damage or injure any of the other tenants of the building, did, with the consent of Dobson, make openings in the east wall of the building, that have caused the defendants to pay a larger amount of insurance annually than they otherwise would have to pay.

### CONCLUSIONS OF LAW.

The defendants have clearly violated the agreement made by Dobson and subject to which they took the property; that the west wall should not be broken through.

As to that agreement they stand in the place of Dobson. Call it an agreement or covenant, it matters not, it is enforceable in equity. Standing in the place of Dobson, the defendants have done what they promised should not be done.

The answer raises two questions:

1. That the injury is slight and prospective. I do not think so. For reasons that must have been satisfactory to business men, such an agreement was made and is, we think, enforceable. If this one opening can be allowed many others may be made. That the parties considered this a very valuable privilege is shown by the offer of defendants to pay a large sum to be permitted to do so.

2. That the plaintiffs are without remedy in equity, because they made openings in the east wall that caused a money loss to the defendants. As to this I am of the opinion that this suit is practically a contest between Blum Brothers and John Dobson; the defendants being Dobson's grantee, and "standing in his shoes."

What was done to the east wall was with Dobson's consent—the defendants as lessees of the lower floors

could not have brought any action against the plaintiffs therefor.

The agreement of November 26, 1902, the defendants were not a party to.

Their rights under that agreement did not accrue till they became the owners of the property.

Since that time the plaintiffs have made no openings in the wall or in any way violated the agreement. The defendants, however, have done so in breaking through the west wall.

If Dobson were alive and attempted to violate his written promise not to break the west wall he would never be allowed to justify his action by saying, that the east wall had been broken through by his consent. When he consented to the breaking through of the east wall he authorized it and lost any right to complain.

As already indicated the defendants as to this litigation stand in Dobson's place with only Dobson's rights.

After the first hearing in this matter, the defendants by agreement filed an additional answer in which they alleged that on or about 1903, the plaintiffs had installed additional boilers, engines, etc., in the cellar of the Dobson building, the effect of which was to increase the heat and vibration in that building, interfering with the comfort of the employees and customers of the defendants, thereby injuring and damaging them.

That thereby the plaintiffs had relieved the Harrison building of that much heat and vibration and also had obtained thereby much additional space, which they, the plaintiffs, had used to install bins for their delivery service. As to this part of the case I find the fact to be:

1. (a) That from 1903 to 1906 certain changes in the arrangement of boilers, engines, etc., were made by the plaintiff, which change consisted in the installing of modern machinery in place of old.

2. (a) That the additional boilers put in the Dobson

building with the apparatus installed to remove the heat made no appreciable increase in the heat or vibration.

3. (a) That the arrangement of machinery that was made, was really a benefit to both buildings, in that it enabled both plants to be used as occasion required, avoided the peril of a breakdown and made certain the necessary power to heat, light, etc., the Dobson, as well as the Harrison building.

4. (a) That the change of boilers, engines,. etc., was made for this purpose only.

5. (a) That the space in the Harrison building vacated by the removed machinery was not used by the delivery department of the plaintiffs, but .there was put in its place a repair department for the machinery in both buildings.

6. (a) The defendants never attempted to stop plaintiffs in the removal and change of machinery by any legal action.

Conclusions of law—as to the matters alleged in the amended answer.

The argument of the defendants is, that the plaintiffs in their agreement with Dobson in 1902 (already quoted) were bound not to "make any changes, alterations or improvements that will in any way interfere with, damage, molest or injure any other tenants of the building," that having done so, they cannot be heard to complain of the acts of the defendants in violating this covenant not to break through the wall.

It is perhaps enough to say in answer to this contention that I have found the facts against the defendants.

There is also this condition of affairs.

When the change of machinery was made Mr. Dobson was alive. If the plaintiffs were injuring his tenants, thereby violating their agreement with him, it was his privilege to stop them. It nowhere appears that he made any complaint about it or made any effort

to stop it.  He stood by, and by silence gave consent to what was done or being done.

If there was any violation of the agreement of 1902 it was while he was alive.  As to that agreement the defendants not being a party to it could not enforce it.

Since the defendants have become the owners of the Dobson building, no act that is in any way a violation of the agreement of 1902 has been committed by the plaintiffs.

There remains to be considered the question as to whether the plaintiffs which are a foreign corporation can maintain this suit.

The plaintiffs did not register in this state till 1903.

The agreement with Dobson was in 1902.  I do not consider this fact as at all preventing the plaintiff from bringing the suit in 1912.  Unless exceptions are filed to the finding of fact or law in ten days a decree will be entered as prayed for in the bill.

Defendants to pay the costs.

Exceptions to adjudication were dismissed by the court.

*Error assigned* was the decree of the court, which was as follows: And now, November 14, 1913, this cause came on to be heard and was argued by counsel, and thereupon on consideration thereof, it is ordered, adjudged and decreed as follows:

### DECREE.

1. The said defendants, Adolph Berg and Max Berg, individually, jointly and as partners, their agents and servants, are hereby ordered and directed to close and wall up the opening heretofore made in the west wall of the building, 1007–09–11 Market street, Philadelphia, Pa., in the basement portion thereof, and to restore the said wall to the same condition as it was before the said opening was made.

2. The said defendants, Adolph Berg and Max Berg, individually, jointly and as partners, their agents and

340 BLUM BROTHERS, INC., *v.* BERG, Appellant.

Assignment of Error—Opinion of the Court. [57 Pa. Superior Ct.

servants, are hereby restrained and enjoined from further breaking through the said west wall or making any openings therein so long as plaintiffs' lease or agreement of November 26, 1902 (whichever it may be called), for the five upper floors of said building shall continue in force and effect.

3. The said defendants are hereby ordered and adjudged to pay the costs of these proceedings.

*Horace Stern*, with him *Morris Wolf* and *John G. Johnson*, for appellants.—Equity will not enforce a building restriction of the nature and under the circumstances involved in the present case: Harkinson's App., 78 Pa. 196; Bangor Excelsior Slate Co. v. Shimer, 12 Pa. Dist. Rep. 777; Willock v. Arensberg, 51 Pa. Superior Ct. 73; Asbury v. Carroll, 54 Pa. Superior Ct. 97.

Equity will not grant relief to a complainant who does not himself come into court with clean hands: Datz v. Philips, 137 Pa. 203; Chandler v. Chandler, 220 Pa. 311; Mint Realty. Co. v. Wanamaker, 231 Pa. 277.

*David Wallerstein*, with him *Abraham Israel*, for appellees.—A court of equity will always restrain future violations of a covenant connected with the use of land: St. Andrew's Church's App., 67 Pa. 512; Muzzarelli v. Hulshizer, 163 Pa. 643; Bald Eagle Railroad Co. v. Nittany Valley Railroad Co., 171 Pa. 284; Landell v. Hamilton, 175 Pa. 327; Electric City Land Improvement Co. v. West Ridge Coal Co., 187 Pa. 500.

A mandatory injunction will be granted where the plaintiff's rights are clear and have not been slept upon, particularly where the pecuniary cost or loss suffered by the defendant in the restoration is merely nominal.

OPINION BY HENDERSON, J., July 15, 1914:

There is no ambiguity in the ninth paragraph of the lease from Dobson to Blum Brothers. It is there expressly agreed that the lessor shall not break through

or suffer or permit to be broken through by anyone
at any time during the continuance of the lease the
west wall of the building to which it refers.   When
the appellants became the purchasers of the Dobson
building they not only had notice of the tenancy of
Blum Brothers but by the terms of the deed to them
acquired title "under and subject nevertheless to all
the terms and conditions, covenants, renewals, rights
and privileges of the lease from Dobson to Blum Broth-
ers."   As a result of their purchase they held the prop-
erty bound by the covenant of Dobson with respect to
the west wall.   Under such circumstances equity will
compel a purchaser either to specifically execute the
covenant of the former owner or will restrain the pur-
chaser from violating it irrespective of the consideration
whether the covenant is or is not one which runs with
the land.   A party taking with notice of an equity
takes subject to that equity, and the purchaser of an
estate who has notice of an existing right in or con-
nected therewith held by a third party is liable in equity
to the same extent and in the same manner as the
person from which the purchase was made.   Where,
therefore, an owner of land enters into a covenant con-
cerning its use and the land is afterward sold to one
who has notice of the covenant the purchaser will take
the premises bound by the covenant and is subject to
be compelled in equity to observe its terms: Daniels v.
Davison, 16 Ves. 249; Tulk v. Moxhay, 11 Beav. 571;
Whitney v. Union Ry., 11 Gray, 359; Barrow v. Richard,
8 Paige, 351; Tallmadge v. East River Bank, 26 N. Y.
105; Columbia College Trustees, etc., v. Lynch, 70 N. Y.
440; Winfield v. Henning, 21 N. J. Eq. 188; Shields v.
Titus, 46 Ohio, 528; Willoughby v. Lawrence, 116 Ill. 11;
St. Andrews Lutheran Church's App., 67 Pa. 512; Bald
Eagle Valley R. R. Co. v. Nittany Val. R. R. Co., 171 Pa.
284; Electric City Land, etc., Co. v. West Ridge Coal Co.,
187 Pa. 500; Parker v. Nightingale, 6 Allen, 341; 3 Pom-
eroy's Equity Jurisprudence, sec. 1295.   When the ap-

pellants made an opening in the west wall of the Dobson building they violated the contract between Dobson and the appellees and standing as they do in Dobson's place with reference to the lease became subject to the application of the plaintiff for equitable relief. It is not pretended that the defendants had any justification for disregarding the covenant made by Dobson, and the court acted clearly within its equitable authority in granting the injunction to restrain any additional violation of the agreement not to make or permit any others to make openings in the west wall. The intention of the defendants to make other openings may be inferred from the making of one opening. This act was in disregard of the covenant in the lease for the plaintiff's protection and may be assumed to be the expression of an intention to wholly ignore the restriction on the defendants' title during the continuance of the Blum Brothers lease.

The appellants defend against the decree on the ground that the plaintiff does not come into court with clean hands. This defense arises out of the eighth paragraph of the lease between Dobson and Blum Brothers wherein it is provided as follows: "The party of the second part may make changes, alterations, additions and improvements to the premises hereby demised. Provided however that the party of the second part shall not remove the light well from the ceiling of the second floor to the roof, if its removal in any way interferes with or deprives Berg Brothers, the tenants of the first and second floors, of light or any other right they may be entitled to. Neither shall the party of the second part make any changes, alterations or improvements that will in any way interfere with, damage, molest or injure any of the other tenants of the building." The appellants allege that the plaintiff made openings in the east wall of the Dobson building from a building occupied by them adjoining the Dobson building and that as a result of the making of these openings the rate of insurance on the goods of the de-

fendant in the basement and first and second floors of
the Dobson building was increased.  They also contend
that the plaintiff changed the location of some machin-
ery in the sub-basement of the Dobson building thereby
increasing the heat and vibration in the floors occupied
by the defendants.  It is not questioned that the plaintiff
had authority from Dobson to make the openings in
the east wall.  That authority was expressly given in
writing at the time the lease was executed at which
time there were other tenants in the Dobson building
than Berg Brothers.  The lease was dated May 26, 1902,
and provides that the lessee assumes all responsibility
of compelling the tenants of the third, fourth, fifth,
sixth and seventh floors to vacate all the building.  The
use of the word "other" shows the intention to dis-
tinguish between Berg Brothers and the other occupants
whose enjoyment of their respective tenements might
be impaired by changes made by the new tenants.  But
if their case is covered by the provision quoted it is
clear that it was not the understanding of the landlord
that the prohibition apply to anything necessarily or
probably following from the making of the openings.
Both parties to the lease understood that the Blum
Brothers building was to be connected with the upper
floors of the Dobson building by openings.  If the ap-
pellants' contention on this branch of the case is to be
sustained the permission to make the openings in con-
nection with the provision against damage, molestation
or injury becomes contradictory of and inconsistent with
the purpose which both lessor and lessee had in mind
with regard to the openings.  Dobson was under no
obligation to Berg Brothers to refrain from making
openings in the east wall of his building and Berg Broth-
ers stand in his place with reference to the title to the
property and to the lease.  Dobson made no complaint
and was not in a legal or equitable situation to make
complaint that the rates of insurance were increased
because of the openings made in the east wall.  None

of the openings were made after Berg Brothers acquired title, and the injury of which they complain must have been in contemplation by Dobson and Blum Brothers when the lease was made or was a necessary incident of the change in the wall permitted by Dobson as to which the appellants have no standing to complain. Further complaint is made in regard to the change in the machinery in the basement. With respect to this the court found that the change consisted of the installing of modern machinery in place of old; that the additional machinery made no appreciable increase in the heat or vibration and that the new arrangement was really of benefit to the Dobson building. This change was made in the life of Dobson without objection on his part and evidently with his consent. In the face of the finding of fact by the learned trial judge this part of the appellants' defense must be considered groundless.

With respect to a mandatory injunction the rule is different from that enforced in a prayer for a restraining injunction. It was said in Wakeling v. Cocker, 208 Pa. 651, that it requires a much stronger case to move a chancellor to put forth his strong arm to compel a positive act on the part of a defendant than to restrain him from committing a wrongful one. The same principle is expressed by the president judge of this court in McIntyre v. Jones, 9 Pa. Super. Ct. 543. The authority of a court of equity to issue a mandatory injunction is well established, but it is an authority to be exercised with great care and in the exercise of a sound discretion. The court has found that no actual or prospective damage to the plaintiff was proved in the testimony except the cost of filling up the opening in case the complainant became the tenant of the Dobson basement which cost would be about $25.00. In view of this finding we think the conclusion reached in Wakeling v. Cocker, supra, should control our decree. In that case there was a finding of fact that no serious injury had been done to the plaintiff and that whatever

injury he had suffered could be compensated by an action for damages. So it is in this case. The complainant is standing on a legal right which entitles it to a restraining injunction, but in the absence of evidence of injury from the breach of the contract already committed by the defendants we are of the opinion that the case is not one which calls for a mandatory injunction. The decree is therefore modified by striking out as much thereof as commands the defendants to close up the opening made by them in the basement wall.

As modified the decree is affirmed at the cost of the appellants.