## Electric City Land and Improvement Company, Appellant, *v.* The West Ridge Coal Company.

[Marked to be reported.]

*Mines and mining—Surface and coal—Deed—Reservation and condition in deed—Covenant running with the land.*

Neither express words of covenant nor any particular technical word, nor any special form of words is necessary to charge a party with covenant.

Words of proviso and condition will be construed into words of covenant when such is the apparent intention and meaning of the parties,

which will be ascertained by resorting to the words of the instrument, read in the light of the surroundings and parties and the subject of the grant.

The owners conveyed a tract of land to a land and improvement company, " excepting and reserving to the parties of the first part, their heirs and assigns, all the coal and minerals beneath the surface of said land and belonging thereto, with the sole right and privilege to mine and remove the same by any subterranean process incident to the business of mining. . . . Provided, that no mine or air shaft shall be intentionally opened or any mining fixtures established on the surface of said land." The grantors knew that the land was to be subdivided, improved and sold as city lots. After such subdivision a mining company, having subsequently succeeded to the rights of the grantors in the minerals and mining rights, bought five of the surface lots, and proceeded to sink a shaft and establish mining fixtures on the surface lots which they had bought. The mining operations were an annoyance to the owners of the other lots. *Held*, (1) that the proviso in the deed was intended to operate as a restriction in the nature of a covenant running with the land, prohibiting the grantors, their heirs and assigns, from opening any " mine or air shaft " or establishing any mining fixtures on the surface of any part of the land conveyed to the land company; (2) that equity would enjoin the mining company from conducting mining operations on the lots purchased by it.

Argued Feb. 22, 1897. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reargued Feb. 22, 1898. Appeal, No. 246, Jan. T., 1896, by plaintiff, from decree of C. P. Lackawanna Co., June T., 1893, No. 8, dismissing bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed. MITCHELL, McCOLLUM and FELL, JJ., dissent.

Bill in equity for an injunction to restrain defendant from the breach of a condition or covenant.

EDWARDS, J., filed the following opinion:

The facts set forth in plaintiff's bill are substantially as follows:

Plaintiff and defendant are corporations. The plaintiff, in August, 1892, purchased from the Ferdinand Von Storch heirs a tract of land, situate in the city of Scranton, and containing about 100 acres, excepting and reserving to the Von Storch heirs, their heirs or assigns, all the coal and minerals beneath the surface of said land, with the sole right to mine the same, without incurring any liability for injury done to the surface or

to any buildings now or hereafter to be erected thereon : Provided that no mine or air shaft shall be intentionally opened or any mine fixtures established on the surface of said land.    The said tract of land is especially adapted for residences, and it was understood between the plaintiff and the Von Storch heirs that the tract was to be made into a town plot and that the provision as to mine fixtures was inserted in the deed for the purpose of keeping the surface free from such improvements.    The tract was surveyed and plotted into lots, blocks and streets.    Plaintiff sold lots from time to time, among them, lots 2 and 4 on Ferdinand street, and lots 1, 3 and 5 on Church street, the contracts of sale prohibiting any opening upon the surface for the purpose of mining or transporting coal.    The two lots on Ferdinand street and the three lots on Church street were sold to certain individuals, who subsequently sold them to the defendant company, who thereupon proceeded to open a shaft upon the surface of these lots, to the great and irreparable injury of the plaintiff's land.    The contemplated mining improvements on the lots enumerated, by reason of their unsightly appearance, the noises incident to their operation, and the noxious gases arising therefrom, will make the locality unhealthy, and will destroy the value of the tract for building lots, and for residences.    Plaintiff prays for an injunction to restrain the defendant from erecting the said mining fixtures and from digging said shaft, and it asks for such other relief as equity may decree.

The answer of the defendant, admitting some of the facts set forth in plaintiff's bill, and denying others, claims that it has a right to sink the shaft and erect the improvements complained of, and that it is not liable to the plaintiff in the premises, and that the bill should be dismissed.    This is not the answer in precise terms, but in substance it amounts to this.

In accordance with the prayer of the bill, a preliminary injunction was issued, and on a rule to continue the same, the parties were heard on affidavits.    After hearing and argument, the preliminary injunction was dissolved and an opinion rendered by GUNSTER, J., in which the merits of the contention between the parties are discussed at some length.    After disposing of a demurrer, the case came on to be heard at a regular term of equity court, on bill, answer and replication, and the matter is now before me for final disposition.

From the evidence and the admissions contained in the answer I make the following findings of fact:

1. The plaintiff and defendant are corporations organized under the laws of the commonwealth of Pennsylvania.

2. On December 18, 1892, the plaintiff, by deed from the heirs of Ferdinand Von Storch, became the owner of a tract of land located in the Second ward of the city of Scranton, and containing about 100 acres, which tract of land the plaintiff subsequently plotted into lots, blocks and streets, grading the streets and making other improvements. Many of these lots were sold to various individuals who thereon erected dwelling houses. The plot was recorded in the proper office of the county. The deed was recorded August 29, 1892. Lots 2 and 4 on Ferdinand street were sold by contract, September 10, 1892, to Oscar S. Mains and Henry Chappel. Lots 1, 3 and 5 on Church street, were sold November 10, 1892, to William H. Roe, trustee. The title to these five lots, by subsequent conveyances, vested in the defendant, lots 2 and 4 by deed direct from the plaintiff, and lots 1, 3 and 5, by deed from the plaintiff to William H. Roe, trustee, and from Roe to the defendant.

3. In the year 1893, the Von Storch heirs, the grantors in the plaintiff's deed, conveyed the coal under the surface of said tract of land to J. H. Rittenhouse, and he subsequently by lease and assignment of deed conveyed the coal to the defendant. The defendant, by means of the several conveyances mentioned, became the owner of the coal under the 100 acre tract of land, and of the surface of lots 1, 2, 3, 4 and 5, a part of said tract, thus uniting in the defendant the ownership of the surface of said lots and of the coal underneath the same.

4. After acquiring the title to the surface of said lots, the defendant proceeded to sink a shaft thereon, to the depth of about 500 feet. This shaft is not used to hoist coal and rock to the surface, excepting the material incident to the excavation, but to hoist the coal from the bottom to an upper vein. The coal is taken through this vein to the foot of the slope, whence it is hoisted to the surface and into the defendant's breaker. Over the shaft complained of there is erected a wooden structure, about fifty feet high, called a "tower," in the top of which there are two shifting wheels, geared with hoisting apparatus. Nearby are placed two boilers and temporary engines, afterwards

replaced with a pair of first-motion engines. There is also a blacksmith shop on the ground. Connected with the machinery is an appliance for signaling from the bottom to the top of the shaft.

5. The said structure, fixtures, machinery and appliances are the usual and ordinary kind used in the anthracite coal regions for like purposes, and the appearance of the fixtures and the noise occasioned by the operation of the machinery are not unusual in the business of anthracite coal mining.

6. In the neighborhood of the shaft in question, a few dwelling houses have been erected, some of them since the excavation of the shaft was begun, and the people occupying these houses, as well as people occupying houses nearby, not on the plaintiff's tract, are annoyed by the noise occasioned by the operation of the machinery, the noise of the exhaust of steam, the dust coming from the shaft, and the unsightliness of the superstructure over the shaft; but these inconveniences and discomforts are the necessary and ordinary results of the business of mining coal. There is no evidence from which I can find that the shaft and fixtures complained of are a nuisance in themselves. Neither is there any evidence of negligence on the part of the defendant in its selection of machinery or in its operation of its works.

7. The deed from the heirs of Von Storch to the plaintiff contains the following exception and reservation: "Excepting and reserving to the parties of the first part, their heirs and assigns, all coal and minerals beneath the service of said land, and belonging thereto, with the sole right and privilege to mine and remove the same by any subterranean process incident to the business of mining, without thereby incurring, in any event whatever, any liability for injury caused or damage done to the surface of said land, or the buildings or improvements thereon, or that may hereafter be put thereon: Provided that no mine or air shaft shall be intentionally opened or any mining fixtures established on the surface of said land."

8. The contracts and deeds for said lots 1, 2, 3, 4 and 5, on Ferdinand and Church streets, under which the defendant claims title to the surface, contain, with slight verbal variations, this exception and reservation, immediately following the grant and description of the land: "Excepting and reserving, how-

ever, out of the same, all the underlying coal and minerals (the party of the first part having no title thereto), together with the unqualified right to mine and take out the same, or to mine and take out coal or mineral from any adjacent property without opening for or transporting the same on and over the surface of said lot, and the said party of the first part, its successors or assigns, is hereby forever released by the party of the second part, for itself, its successors or assigns, from any liability for any damage done to the surface of said lots or to any buildings that may now or hereafter be erected thereon by reason of the mining and taking out of said coal or mineral, and any right of action that the party of the second part, its successors or assigns might otherwise have against the party of the first part, growing out of such possible damage is by this indenture waived forever by the party of the second part for itself, its successors or assigns; and any sum in damages that possibly might be recoverable against the party of the first part by the party of the second part, its successors or assigns, is by this indenture fully liquidated and settled forever by and between the parties thereto. It being fully understood and agreed between the parties hereto that the fact that the coal and minerals being excepted and reserved with the right to mine the same, together with the unqualified release of the party of the first part by the party of the second part for itself, its successors or assigns from any liability by reason of any damage that may result to the surface of said lot on account of the mining of said coal or mineral, as fully set forth above, has materially affected the consideration money herein agreed upon by reducing the same one-half from that which it otherwise would have been."

I find the following conclusions of law :

1. The evidence discloses no just or equitable grounds of complaint against the defendant arising from the character of the shaft and fixtures complained of, nor from the manner in which the defendant has operated the same in connection with its mining operations.

2. The defendant being the owner of all the coal under and of the surface of lots 1, 2, 3, 4 and 5 aforesaid, the proviso connected with the coal reservation relating to the opening of shafts or establishing mine fixtures upon the surface of the land, as set forth in the deed of the Von Storch heirs to the plaintiff,

and recited in the contracts and deeds in evidence, is not binding upon the defendant and imposes upon it no obligation to other lot owners nor to the plaintiff.

I find it unnecessary to discuss the law governing this case. The facts developed on final hearing do not differ materially from the facts contained in the affidavits used at the hearing of the rule to continue the preliminary injunction. My judgment coincides with that of my associate, GUNSTER, J. On the question of nuisance and the limitation of mining rights, I refer to the following authorities : Rhodes et al. v. Dunbar et al., 57 Pa. 274; Huckenstine's Appeal, 70 Pa. 102; McCaffrey's Appeal, 105 Pa. 253; Pa. Coal Co. v. Sanderson, 113 Pa. 126; Price v. Grantz, 118 Pa. 402.

As to the other questions relative to the proviso not to open a shaft on the surface of plaintiff's land it is sufficient to say that for the protection of the owner of the surface and against the owner of the coal, when the owner of the coal became also the owner of the surface, the effect of the proviso was destroyed.

I make the following order:

This cause came on to be heard at a regular term of equity court, and was argued by counsel, and thereupon upon consideration thereof it is ordered, adjudged and decreed that the bill of complaint filed in this case be dismissed at the costs of the plaintiff.

*Error assigned* among others was decree dismissing bill.

*S. B. Price,* with him *George W. Beale,* for appellant.—If the defendant's grantor covenanted not to erect certain structures on the surface of the land in question, and the agreement was intended for the benefit of the land conveyed to the plaintiff, it is a covenant running with the land. Every purchaser from the plaintiff company is interested in it, and every person having privity of estate in the coal excepted and reserved from the land under such a covenant is bound by it: 1 Bouvier's Law Dictionary, 448 ; Spencer's Case, 1 Smith's Leading Cases, 224; Trull v. Eastman, 3 Metc. 121; Hartung v. Witte, 59 Wis. 285; Lydick v. B. & O. R. R., 17 W. Va. 427; B. & A. R. R. v. Briggs, 132 Mass. 24; Divan v. Loomis, 68 Wis. 150 ; 1 Smith's Leading Cases, 175; Clark v. Martin, 49 Pa. 289.

Equity will enforce a covenant of adjoining owners against the grantee of one of them not to use land for building purposes: Trustees v. Lynch, 70 N. Y. 440.

Where land which is subject to a covenant running with the land has been conveyed in parcels to several owners, each parcel is entitled to the benefit pro rata of such covenant: McClure's Exrs. v. Gamble, 27 Pa. 288; Parish v. Whitney, 3 Gray, 516; Martin v. Drinan, 128 Mass. 515; Kennedy v. Owen, 136 Mass. 199; Hannen v. Ewalt, 18 Pa. 9; Negley v. Morgan, 46 Pa. 281; St. Andrew's Church's App., 67 Pa. 518; Hills v. Miller, 3 Paige, 454; Muzzarelli v. Hulshizer, 163 Pa. 643.

Where a plot of lots is referred to in a deed, it has the same effect as if it had been made part of the deed itself: Burgess v. Anderson, 48 Pa. 253; McCall v. Davis, 56 Pa. 431; Transue v. Sell, 105 Pa. 604; Ferguson's App., 117 Pa. 451; Schenley v. Pittsburg, 104 Pa. 472.

There is no word more proper to express a condition than the word "provided," and it shall always be so taken unless it appears from the context to be the intent of the parties that it shall constitute a covenant: Rich v. Atwater, 16 Conn. 419; 2 Bouvier's Law Dictionary, 483.

In order to interpret a contract correctly, the one who interprets should, as far as possible, put himself in position of the parties at the time the writing was executed. This is only another way of saying that the intention should govern. Regard must be given to the occasion which gave rise to it, the relative position of the parties, and their obvious designs as to the object to be accomplished: 11 Am. & Eng. Ency. of Law, pp. 512, 513, and cases cited; 1 Addison on Contracts (3d Am. ed.), sec. 221, p. 337.

The parties having considered and agreed upon the mode of access to the coal conveyed, no implication can be allowed of any other way, however convenient: Bascom v. Cannon, 158 Pa. 225; Scranton v. Phillips, 94 Pa. 15; Williams v. Hay, 120 Pa. 495.

Where the surface of real estate has been severed from the coal, and the several owners define their mutual rights and liabilities by contracts regularly recorded, and on the faith of such stipulations lots have been purchased and houses have been

erected for the purpose of homes, which would be seriously injured by the construction and operation of such improvements, as is admitted in this case, the breach of such contracts should be restrained by a court of equity.

The shaft and mine fixtures are a nuisance: Adams on Eq. 210.

*John G. Johnson* and *J. E. Burr*, with them *J. Alton Davis, John R. Edwards* and *Charles H. Welles*, for appellee.—A reservation of coal carries with it of necessity a right of way to reach the thing reserved. The right to mine and remove reserved coal also carries with it as a necessary incident the right to reach it, a right to use such portion of the granted surface as may be necessary to obtain the coal: Wissler v. Hershey, 23 Pa. 333; Plitt v. Cox, 43 Pa. 486; Turner v. Reynolds, 23 Pa. 199; McSwinney on Mines, 372.

A person who resides in the center of a large city must not expect to be surrounded by the stillness which prevails in a rural district. He must necessarily have some of the noise and occasionally feel slight vibrations produced by the movement and labor of its people, and by the hum of its mechanical industries: Huckenstine's App., 70 Pa. 102.

The proviso in the case at bar is a condition in form and effect, and not a covenant against use. It qualifies the manner in which the coal leased or granted to the appellee and others should be mined. It is annexed to and qualifies the reservation and exception relating to the coal.

As the policy of law is to render the alienation and transfer of property as free as possible, conditions are not favored in law: Paschall v. Passmore, 15 Pa. 298; First Methodist Episcopal Church of Columbia v. Old Columbia Public Ground Co., 103 Pa. 608; 1 Washburn on Real Property,*447; Gray v. Blanchard, 8 Pick. 284; 1 Leading Cases on the American Law of Real Property, 115.

Even if construed as a covenant, the plaintiff has no right to complain. If such a right exists, it belongs only to the grantors—to the Von Storch heirs—and not to their grantees: Van Rensselaer v. Ball, 19 N. Y. 100; Gray v. Blanchard, 8 Pick. 284; Marwick v. Andrews, 25 Me. 525; Dana v. Wentworth, 111 Mass. 293; Tobey v. Moore, 130 Mass. 451.

The last two cases also lay down the principle that there must be evidence of the intention to plot out or parcel lands, to be gathered from the deed, and from the circumstance surrounding the case.   There is no evidence in the case at bar showing the intention of the defendant in purchasing the 100 acres from the Von Storch heirs, and there is nothing in the deed to show such intention.   See also Skinner v. Shepard, 130 Mass. 209; Jeffries v. Jeffries, 117 Mass. 184; Adams v. Valentine, 33 Fed. Rep. 1; Vail v. Long Island R. R., 12 N. E. Rep. 607; Landell v. Hamilton, 175 Pa. 327; Mitchell v. Leavitt, 30 Conn. 587.

The right of way is incident to the grant: Barringer and Adams on "The Law of Mines and Mining in the United States," 584, and the Pennsylvania cases therein referred to, namely: Hasson v. Oil Creek and Allegheny R. R. Co., 8 Phila. 556; Rankin's Appeal, 1 Monaghan, 308.


Opinion by Mr. Chief Justice Sterrett, Oct. 17, 1898:

This appeal from the decree dismissing plaintiff company's bill involves the construction of the hereinafter quoted clause in the deed of Von Storch's heirs, conveying to said company in fee 100 acres of land in the city of Scranton.

It appears to have been fully understood by the parties that the land thus conveyed was bought for the purpose of subdivision, sale and improvement as city lots.   A complete plan thereof, called "Electric City Park," was accordingly made by the vendee and duly recorded, designating the streets, alleys and lots located therein by names and numbers.   The deed dated August 18 was duly recorded August 29, 1892.   After describing the property by adjoining owners, etc., it contains this clause: "Excepting and reserving to the parties of the first part, their heirs and assigns all the coal and minerals beneath the surface of said land and belonging thereto, with the sole right and privilege to mine and remove the same by any subterranean process incident to the business of mining . . . . . Provided, that no mine or air shaft shall be intentionally opened or any mining fixtures established on the surface of said land."

The West Ridge Coal Company, defendant, having subsequently acquired title by mesne conveyances under said grant-

ors to the coal, minerals and subterranean mining rights and privileges excepted and reserved as aforesaid, and having also acquired title, in like manner under the plaintiff company, to lots numbered one to five, inclusive, on its plan aforesaid, proceeded to sink the shaft complained of on said lots to the depth of about 500 feet, on which shaft it erected a wooden structure about fifty feet high, called a " tower," in the top of which are two shifting wheels geared with hoisting apparatus; and it also built a blacksmith shop on said five lots, and placed thereon engines, boilers, etc. Connected with said machinery is an apparatus for signaling from the top to the bottom of the shaft, etc.

It is unnecessary to refer in detail to the facts established by the pleadings and proofs, and found by the court below. They conclusively show that the shaft, fixtures, machinery and appliances complained of were put upon the said five lots by the defendant company, after it acquired title to said lots, and were used by it in manifest disregard and violation of the express terms of the above-quoted proviso. Among other things the learned trial judge found that persons who purchased and improved lots in plaintiff company's plan, and occupied the dwellings erected thereon, as well as others, were "annoyed by the noise occasioned by the operation of the machinery, the noise of the exhaust of steam, the dust coming from the shaft, and the unsightliness of the superstructure over the shaft," etc. But, notwithstanding the clearly established facts in support of the material averments of the bill, he held that plaintiff company was not entitled to any measure of relief. His reasons for so holding are given in his second conclusion of law as follows: " The defendant being the owner of all the coal under, and of the surface of lots 1, 2, 3, 4 and 5 aforesaid, the proviso connected with the coal reservation relating to the opening of shafts or establishing mine fixtures upon the surface of the land, as set forth in the deed of the Von Storch heirs, and recited in the contracts and deeds in evidence, is not binding upon the defendant, and imposes upon it no obligation to other lot owners, nor to the plaintiff. . . . When the owner of the coal became the owner of the surface, the effect of the proviso was destroyed."

We cannot assent to this. In view of the facts established by the pleadings and proofs we are satisfied that the learned

judge's conclusions of law are erroneous, and that the decree should not be permitted to stand.   The proviso was evidently intended to operate as a restriction in the nature of a covenant running with the land, prohibiting the grantors, their heirs and assigns from opening any "mine or air shaft," or establishing any mining fixtures on the surface of any part of the land conveyed to the plaintiff company.   It is true, there are no express words of covenant in the proviso, but it is well settled that neither express words of covenant nor any particular technical words, nor any special form of words is necessary to charge a party with covenant: 1 Roll. Abr. 518; Lant v. Norris, 1 Burr. 290; Bac. Abr. Cov. A.; Shep. Touchstone, 161, 162.   Any words showing the intent of the parties to do or not to do a certain thing raises an express covenant: 1 Bouv. Law Dic. 448; Spencer's Case, 1 Smith's Lead. Cases (9th ed.), 224. No special words are necessary to make a covenant that will run with the land: Trull v. Eastman, 44 Mass. 121; 1 Smith's Leading Cases, 224.

" Words of proviso and condition will be construed into words of covenant when such is the apparent intention and meaning of the parties: " Parsons on Cont. 23.

In this case the manifest intention of the parties was, in the first place, to except from the grant, and reserve to the grantors, their heirs and assigns all the coal and minerals beneath the surface of the land described in the deed, with the right to mine and remove the same by any subterranean process, etc.   This was done in language that is not susceptible of any doubt.   In the second place, it is equally clear that it was their further intention and agreement that in the exercise of the mining rights and privileges thus excepted and reserved, the grantors, their heirs and assigns, owners of the coal and minerals, would not intentionally open any mine or air shaft or establish any mining fixtures on the surface of the land; and as expressive of that mutual agreement the proviso was added, and, in effect, the grantors thereby covenanted for themselves their heirs and assigns that neither they nor either of them would "intentionally" open any "mine or air shaft " or establish "any mining fixtures " on the surface of the land.   The restriction thus placed on the mining rights and privileges was as permanent and enduring as the rights themselves.   It was evidently im

posed, not for the benefit of the five lots which the defendant company afterwards purchased, nor for the benefit of any particular part of the surface, but for the benefit of the entire tract, and the owners of each and every lot therein. If the defendant company, instead of purchasing the five lots only, had acquired title to all the lots into which the 100 acre tract was subdivided, and thus united in itself the title to the entire surface and the coal underneath the same, together with the mining rights pertaining thereto, there would be some force in the learned judge's legal conclusion that " when the owner of the coal became also the owner of the surface the effect of the proviso was destroyed." It was never intended by the parties that the purchase of a few of the surface lots by the owner of the coal and minerals should in any manner impair the force and effect of the proviso, much less " destroy " the same.

Where, as in this case, it is quite apparent from the written documents in evidence, and from all the facts and circumstances of the case, that the restrictions contained in the proviso were annexed to the reservation of the underlying coal, etc., for the manifest purpose of protecting or rendering more beneficial and advantageous the occupation of the granted estate, when the same would be divided into separate parcels and owned by different individuals, we have a case in which equitable relief is the only adequate remedy.

The underlying principle is similar to that recognized in several of our cases, among which are Clark v. Martin, 49 Pa. 289; St. Andrew's Church's Appeal, 67 Pa. 516; Muzzarelli v. Hulshizer, 163 Pa. 643; Bald Eagle Valley Railroad Co. et al. v. The Nittany Valley Railroad Co. et al., 171 Pa. 284, where the authorities are reviewed by our Brother DEAN; Landell v. Hamilton, 175 Pa. 327, 333. In the latter it is said that the test by which to determine whether a covenant in a deed runs with the land is the intention of the parties. To ascertain the intention, resort must be had to the words of the covenant, read in the light of the surroundings of the parties and the subject of the grant.

Without further elaboration or discussion of the subject, we are satisfied that, on principle as well as authority, the plaintiff company is entitled to relief. The decree is therefore reversed with costs to be paid by the defendant; and it is now adjudged

and decreed that the bill be reinstated and that a perpetual injunction, as therein prayed for, be issued against the defendant company, its officers, agents and servants.

Mr. JUSTICE MITCHELL, dissenting:

The defendant is the owner of both the coal and the surface, and has the rights incident to ownership in both. The covenant restricting its rights under its purchase of the coal, ran in favor of the plaintiff as the surface owner, but did not include rights of any other except by what seems to me inadmissible implication against the express words of the contract of the parties. When, therefore, the defendant bought the surface of the lots in question, the full title to both parts merged, and defendant became owner of the whole in fee without restriction. I would affirm the judgment for these reasons, more fully set out in the opinion of the learned judge below.

McCOLLUM and FELL, JJ., join in this dissent.