570 A.2d 88

John M. WAKSMUNSKI and Agnes M.
Waksmunski, husband and wife

v.

Edward A. DELGINIS and Agnes Delginis, husband
and wife, Appellants.

John M. WAKSMUNSKI and Agnes M. Waksmunski,
husband and wife, Appellants,

v.

Edward A. DELGINIS and Agnes Delginis,
husband and wife.

Superior Court of Pennsylvania.

Argued Oct. 30, 1989.

Filed Feb. 5, 1990.

38

Raymond J. Wendekier, Johnstown, for Delginis, appellants, in No. 360 and appellees, in No. 460.

William G. Barbin, Johnstown, for Waksmunski, appellants, in No. 460 and appellees, in No. 360.

Before BROSKY, DEL SOLE and HESTER, JJ.

HESTER, Judge:

John and Agnes Waksmunski instituted this equity action on November 6, 1984, by petition for injunction against Edward and Agnes Dilginis.[1]  The equity court issued an injunction against respondents to cease blocking an easement over the respondents' property which petitioners used to access their property.  The equity court, however, denied petitioners' request to declare the easement a public road pursuant to 53 P.S. § 66105 thereby widening the easement from fourteen feet to thirty-three feet.  We affirm.

The Waksmunskis filed this action against the Dilginises by petition for injunction, in which they alleged the following.  Petitioners own property directly across an unnamed lane or roadway from property owned by respondents in Portage Township, Cambria County.  Both properties are located in an area known as Dutch settlement, where five other families also reside.  The roadway is used as the sole-access road by all property owners in the settlement.  Construction of a different access road would be prohibitively expensive.  Furthermore, petitioners have a fourteen-foot easement in the roadway as established in their chain of title, which originates from a grantor common to the grantor of respondents.  In September, 1984, respondents partially obstructed the lane by placing wooden posts and steel reinforcing bars along the side of the lane, which has significantly narrowed the size of the lane rendering motor vehicle access dangerous.

1.  The Dilginis name is spelled incorrectly in the caption to this action because the name is spelled incorrectly in the caption to the petition instituting the action.  The answer to the petition notes the correct spelling of the name.

Petitioners also alleged that the roadway has been in continuous use as a public right-of-way in excess of twenty-one years and that during that time, the lane was continually maintained and improved by the Township of Portage.

Petitioners requested an injunction preventing further obstruction of the roadway. They also requested that the roadway be widened to thirty-three feet pursuant to 53 P.S. § 66105.

In their response to the petition, respondents denied both that all the families in the settlement used the roadway and that the roadway was the sole access to the settlement. Further, they alleged that the steel posts that they admittedly placed on the easement were actually located on their property and outside the easement as described in the chain of title to the relevant properties. Respondents also denied that the road had been maintained and used by the public in excess of twenty-one years.

The matter was heard by the equity court at hearings held on July 28, 1987, and January 26, 1988. The first witness was Charles W. Sasgiver who has been the Portage Township road foreman for twenty years and has worked on the roads in the township for thirty-four years. He testified that for twenty-five years, the township continually has cleared the snow from the roadway following every snowstorm. The township also patched holes and constructed and repaired the drainage ditches along the roadway. The township has graded the entire roadway occasionally, has placed red dog along the road from time to time, and has partially surfaced the road. Minutes from the township supervisors' meeting were read into evidence at the hearing. The supervisors do not want to dedicate this road as a public highway, but they are willing to continue to plow and patch it.

Pictures of the area introduced at the hearing by petitioners clearly demonstrate that respondents placed large posts inside a clearly-defined dirt roadway. Mr. Waksmunski testified that when ice or snow appear on the road, a truck

owned by one of the people using the easement cannot pass through the road at the site of the posts.

At the hearing, respondents maintained that the posts were on their property and that the easement granted in the deed was different from the roadway actually utilized by the individuals in the settlement. They contended that the easement as defined in the deed is located more on petitioners' property than the roadway as it actually exists and that the posts that encroach on the roadway are not in the easement but are on their own property.

By order dated January 24, 1989, the equity court granted petitioners' request for a permanent injunction as to a fourteen foot roadway. It established the easement by reference to the survey introduced into evidence by petitioners at the hearing. The equity court modified the position of the easement from that contained in the deed, which is delineated in the survey. It changed the boundaries of the easement to conform to the way the easement actually has been utilized, thus making it conform with the roadway as it appears in the photographs introduced into evidence. Under the court-ordered easement, respondents' posts are within the easement, and respondents were ordered to remove the posts. The equity court declined to widen the roadway to thirty-three feet by dedicating it as a public roadway.

The Dilginises filed a timely appeal from the order, and the Waksmunskis filed a timely cross-appeal.

### Dilginis Appeal

The Dilginises first contend that the equity court had no jurisdiction to entertain this matter in that the action should have been brought at law. Since they never raised this issue by preliminary objection, the issue has been waived. Pa.R.C.P. 1509(c) (objection that equity court has no jurisdiction due to existence of adequate remedy at law is waived if not raised by preliminary objection).

■ The next issue raised by the Dilginises is whether the evidence established that the roadway as it exists was obstructed by the fence posts. We conclude that the evidence establishes obstruction. The photographs of the roadway introduced into evidence at the hearing clearly show that the posts are on the dirt roadway and that larger motor vehicles have difficulty navigating through the portion of the roadway where the posts are located. Further, the boundaries of the dirt roadway are clearly marked by the start of grass and weed growth. Accordingly, we affirm the equity court's finding of encroachment.

■ Next, the Dilginises object to where the equity court placed the easement, and they argue that the order effectuated a reformation of the deed. They note that reformation of a deed may be made only if there is a mutual mistake in the deed. However, the Dilginises misconstrue the effect of the order. The equity court did not reform the deed description; it explicitly based its location of the easement by reference to the survey introduced by the Waksmunskis. The survey is based on the deed. The equity court merely changed the boundaries of the easement to reflect where the easement actually has been used since its inception which leads us to the next argument raised by the Dilginises.

The Dilginises argue that "[n]o evidence was presented to establish that Mr. and Mrs. Waksmunski are entitled to an easement by prescription." Dilginis brief at 9. We disagree. Mr. Sasgiver testified that he personally had supervised the plowing of the roadway for twenty-five years. Both parties were in agreement at the hearing that the configuration of the roadway as it now exists has not changed since they were children—far in excess of twenty-one years. In fact, at the hearing, the Dilginises never denied that they placed the posts inside the roadway actually used by the other residents of Dutch settlement. They defended their actions solely on the ground that they could place their posts where they are because the posts are on their property. They implicitly conceded by this position

that the road has been used inconsistently with the deed description. The Dilginis deed is dated 1947.

The Pennsylvania Supreme Court recently reiterated the elements of a prescriptive easement:

> The standards for determining the acquisition of title to land by adverse possession and for determining whether an easement over property has been extinguished by adverse possession contain the same basic elements—in each situation, the possession that will acquire title or extinguish an easement must be actual, continuous, adverse, visible, notorious and hostile possession of the land in question for the prescriptive period of twenty-one years.

*Estojak v. Mazsa*, 522 Pa. 353, 361, 562 A.2d 271, 275 (1989); *see also Keefer v. Jones*, 467 Pa. 544, 359 A.2d 735 (1976).

Furthermore, our standard of review on this issue is extremely narrow:

> We are constrained by a narrow standard of review and are bound by the trial court's determination pertaining to the credibility of the witnesses and the weight to be accorded the evidence:
>
>> Appellate review of equity matters is limited to a determination of whether the chancellor committed an error of law or abused his discretion. The scope of review of a final decree in equity is limited and will not be disturbed unless it is unsupported by the evidence or demonstrably capricious.
>
> *Hostetter v. Hoover*, 378 Pa.Super. 1, 6 547 A.2d 1247, 1250 (1988) (citations omitted).

*Fuisz v. Fuisz*, 386 Pa.Super. 591, 596, 563 A.2d 540, 541 (1989); *see also Buffington v. Buffington*, 390 Pa.Super. 61, 568 A.2d 194 (1989) (equity court's determination regarding existence of easement will not be reversed on appeal absent abuse of discretion, lack of evidentiary support, or capriciousness).

Instantly, there was direct evidence that the occupants of Dutch settlement have used the roadway shown in the photographs openly, notoriously, and continuously for a period that exceeds twenty-one years. We will not reverse the equity court's determination regarding the boundaries of the easement.

### *Waksmunski Appeal*

■ The Waksmunskis appeal the equity court's determination that the roadway should not be dedicated as a public road pursuant to 53 P.S. § 66105 which provides, "Every road not of record which has been used for public travel and maintained and kept in repair by the expenditure of township funds for a period of at least twenty-one years and upwards shall be deemed to be a public road of the width of thirty-three feet...."

However, we believe that the township should have been joined as an indispensable party to this action and that we have no jurisdiction to decide the issue. *See Nelson v. Dibble,* 353 Pa.Super. 537, 510 A.2d 792 (1986) (issue of failure to join indispensable party cannot be waived; if such a party is not joined, court is without jurisdiction to decide the matter).

■ An indispensable party in an equity action is one whose rights are so connected with the claims of the parties that a decree cannot be entered without impairing those rights. *Id.* Instantly, the township's rights are inextricably bound with dedication of this road to its care. The obligation of the township to maintain this easement as a public highway involves use of substantial public funds, including widening the road by approximately twenty feet. The following factors are utilized in determining whether a party is indispensable: 1) whether the party has a right or interest related to the claim; 2) the nature of the right or interest; 3) whether the right or interest is essential to the merits; and 4) whether justice can prevail without violating due process rights of the absent party. *Id.,* citing *Mechan-*

*icsburg Area School District v. Kline,* 494 Pa. 476, 481, 431 A.2d 953, 956 (1981).

At least three of the four factors apply here. The township has an interest in the outcome of the litigation since it is the party which would have been burdened with liability had the roadway been dedicated to the public by the equity court. The nature of the interest is substantial as the township could have become liable for maintaining the roadway for all purposes, including possible tort liability for negligent maintenance, and for widening it. The interest directly related to a determination of public use and the township's obligation. Justice requires that the township be given an opportunity to make its legal arguments regarding whether the obligation should be imposed on it.

In *Nelson v. Dibble, supra,* we determined that the township was an indispensable party to an action where the issue was whether the township had abandoned what was once its public road. We see no difference here, where the township's assumption of title and its attendent responsibilities are at issue. Accordingly, we have no jurisdiction to determine the issue of whether this easement became a public road due to the failure to join the township.

■ However, a remand for joinder is not necessary since the equity court's disposition of the matter resulted in the roadway not being declared a public responsibility. *Compare Nelson v. Dibble, supra.* Assuming we had jurisdiction, we would not disturb the equity court's determination that the road has not been used for "public" travel. *See Township of Lower Saucon v. Horvath,* 43 Pa.Commw. 172, 402 A.2d 1099 (1979). In the equity court's opinion, the road was not used by the public, but as private access to homes by the five families residing in Dutch settlement. We would not reverse this factual determination. *See Stewart v. Watkins,* 427 Pa. 557, 235 A.2d 604 (1967) (determination of "public" use under 53 P.S. § 66105 is one of fact to be determined by equity court and ordinarily will not be disturbed on appeal).

The order of the court is affirmed in all respects. Edward A. and Agnes Dilginis are ordered to remove all obstructions that they have placed along the easement described in Exhibit A to the order entered by the Court of. Common Pleas of Cambria County in this action on January 24, 1989.