576 A.2d 59

**Thomas N. LOGSTON and Foresta Ann Logston, his wife, Judson Riley Anderson and Marlene Anderson, his wife J.C. Carp, and Penn–Craft Community Association, by Joseph Shaw, trustee ad litem**

v.

**PENNDALE, INC., a Pennsylvania corporation and Mary Jo Sinosky, individually and t/d/b/a Mr. G's Family Ties, Appellants.**

Superior Court of Pennsylvania.

Argued March 27, 1990.

Filed May 30, 1990.

---

394

Thomas A. Bowlen, Uniontown, for appellants.

John M. Purcell, Uniontown, for appellees.

Before TAMILIA, KELLY and CERCONE, JJ.

CERCONE, Judge.

The trial court, after a non-jury trial, imposed a perpetual injunction restraining the appellants, Penndale, Inc.,[1] a Pennsylvania corporation, and Mary Jo Sinosky, individually, and trading and doing business as Mr. G's Family Ties,[2] from using a lot in violation of the restrictive covenants running with the land. Specifically, the appellants are restricted from selling alcoholic beverages at the restaurant located on lot number 54 in the Village of Penn–Craft. Appellants timely filed a motion for post-trial relief which the trial court denied. This is an appeal from the denial of that relief. We affirm.

1. The record reveals that Penndale was incorporated by appellant Mary Jo Sinosky. Ms. Sinosky is also the sole shareholder of the corporation.

2. The record reveals that Mr. G's Family Ties is a restaurant in the business of serving food. The restaurant applied for a liquor license with the intent of serving alcoholic beverages with meals.

The facts of this case, as determined by the trial court, are as follows. The Penn–Craft community was developed by the American Friends Services Community organized by the Quakers. It began as an experiment of co-operative development whereby the unemployed worked together to build their own homes, produce their own food, and develop new skills. The goal was to achieve economic stability without total reliance on the local coal industry for employment. The cornerstone of the development was a co-operative store owned by the members of the community. This store provided clothing and food as well as dairy and stock feed necessities.

On December 12, 1937, the real property was initially conveyed from American Friends Service Committee, Inc. to Friends Services, Inc. On January 20, 1938, the first official community plan of the Penn–Craft tract set forth fifty-four separate numbered lots. On April 23, 1946, all of the residential lots, lots numbered 1 through 53 were conveyed by Friends Service, Inc. to A. Hurford Crosman. The deed conveying these lots included, *inter alia*, the following restrictions:

. . . . .

(c) That no intoxicating liquor of any kind shall be sold or kept for sale or manufactured for sale on said premises.

. . . . .

(g) That these restrictions shall remain in force for a period of twenty years from the date of this agreement and thereafter perpetually unless and until revoked or modified after that time by a majority vote of the persons then holding deed to Lots in the portions of the Penn–Craft Tract to which these restrictions apply, who are at that time residing on their Lots, such deed holders to have one vote for each such Lot as laid out on the Plan held by them respectively; all of which the grantee by the execution hereof, hereby covenants for himself, his heirs,

executors, administrators and assigns to keep and perform as covenants running with the land.

The deed further stated:

1. In the event that Friends Service, Inc. should in the future lay out some other portions of the land known as the Penn–Craft Tract ... in a manner similar to the lots herein referred to, it shall impose restrictions, similar to those herein referred to, upon all such lots which are to be used for home sites, and Homesteaders, whether leaseholders or owners thereof, acquiring such lots, shall become members of the Community Association hereinafter provided for. Until Friends Service, Inc. lays out such other portion of the tract in lots ready for development, however, no restrictions of any kind shall bind the other portions of the Penn–Craft Tract.

On the same date as the above deed, April 23, 1946, these fifty-three lots were reconveyed from A. Hurford Crosman to Friends Services, Inc. The deed reconveying these lots contained a clause referring to the covenants in the prior deed: "all of which the grantee by the execution hereof, hereby covenants for itself, its successors and assigns to keep and perform as covenants running with the land."

On August 14, 1946, Friends Services, Inc. platted and subdivided the tract of land by filing a map and plat of said tract. The lot numbered 54 was marked on the plan as "Co-op Store Site," and "unrestricted." On February 7, 1947, the Friends Service Inc. conveyed lot 54, the co-op store site, to the Penn–Craft Cooperative Association. There were four restrictions in the deed conveying this property. They included, *inter alia:*

. . . . .

(c) that no intoxicating liquor of any kind shall be sold or kept for sale or manufactured for sale on said premises.

. . . . .

All succeeding deeds which conveyed lot 54 contained the same four restrictions.

On March 9, 1948, a second plan was recorded setting forth the original fifty-four lots and five additional lots. The lot numbered 54 was no longer marked as the co-operative store site, nor was it marked "unrestricted." On May 14, 1951, the initial deed for the other community oriented properties, i.e. the trade center and the community center, also contained the four restrictive clauses included in the deed conveying lot 54. On November 1, 1952, a third plan was recorded. Again, there was no reference to lot number 54 as being the co-operative store nor being "unrestricted." However, the record reveals that the lot was at all times used as a non-residential lot.

On July 10, 1985 there was a conveyance of lot 54 to appellant, Penndale, by a deed which included the above-mentioned four restrictions. However, on February 19, 1987, Penndale recorded a corrective deed which stated: "This is a corrective Deed since it was never intended that any restrictions be placed on the property at the original time of conveyance." It was this unilateral removal of the four restrictions by appellant, Penndale, in the corrected deed along with the application for a liquor license to be used in the restaurant now on lot 54, that prompted the appellees to file a complaint in equity for injunctive relief.

Appellants raise the following four issues for our review: whether the trial court erred (1) in concluding that the restrictive covenant pertaining to intoxicating liquor runs with the land; (2) in failing to conclude that the restrictions in the deed pertaining to intoxicating liquor are personal in nature; (3) in concluding that the character of the neighborhood as developed by the American Friends Service Committee and organized by the Quakers in the 1930's remains the same because descendants of some of the original developers reside there; and (4) in concluding that the sale of alcoholic beverages at the appellants' restaurant would have any affect on the use and enjoyment of neighboring residential properties. We will consider each issue *seriatim*.

Initially, we note that our standard of review is very narrow. As we stated in *Waksmunski v. Delginis*, 391 Pa.Super. 37, 570 A.2d 88 (1990):

We are constrained by a narrow standard of review and are bound by the trial court's determination pertaining to the credibility of the witnesses and the weight to be accorded the evidence:

Appellate review of equity matters is limited to a determination of whether the chancellor committed an error of law or abused his discretion. The scope of review of a final decree in equity is limited and will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. (citations omitted)

*Id.* 391 Pa.Super. at 43, 570 A.2d at 91–92, *quoting Hostetter v. Hoover*, 378 Pa.Super. 1, 6, 547 A.2d 1247, 1250 (1988).

Appellants combine their first two arguments. We will likewise consider these issues together. Specifically, appellants contend that the trial court erred in concluding that the restrictive covenant pertaining to intoxicating liquor runs with the land as opposed to being personal in nature. Covenants, to run with the land, ordinarily must affect the land and are intended to pass with it, and covenants which are merely personal do not so run. *Caplan v. City of Pittsburgh*, 375 Pa. 268, 100 A.2d 380 (1953). In construing a restrictive covenant, we must ascertain the intentions of the parties by examining the language of the covenant in light of the subject matter thereof, the apparent purpose of the parties, and the conditions surrounding execution of the covenant. *Gey v. Beck*, 390 Pa.Super. 317, 568 A.2d 672 (1990). A covenant that the premises involved shall not be used for the sale of intoxicating liquors has been held to run with the land. *Benner v. Tacony Athletic Association*, 328 Pa. 577, 196 A. 390 (1938); *Appeal of J.C. Grille, Inc.*, 181 Pa.Super. 456, 124 A.2d 659 (1956). No formal or specific technical language is required to set forth a covenant running with the land, nor is it required that the covenant be expressed as such.

*Electric City Land & Improvement Company v. West Ridge Coal Company*, 187 Pa. 500, 511, 41 A. 458, 462 (1898) *cited with approval in Mock v. Hoffman*, 27 Pa.D. & C.3d 169 (1980). Restrictive covenants which restrict the use of property, although not favored by the law, are legally enforceable. *Grasso v. Thimons*, 384 Pa.Super. 593, 559 A.2d 925 (1989) *citing Morean v. Duca*, 287 Pa.Super. 472, 430 A.2d 988 (1981). Restrictive covenants are to be strictly construed against persons seeking to enforce them and claiming benefit thereof and in favor of the free, unrestricted use of property. *Covey v. Gross*, 377 Pa.Super. 580, 547 A.2d 1214 (1988).

 The express words of the restrictive covenant in each of the deeds conveying lot 54, state:

(c) that no intoxicating liquor of any kind shall be sold or kept for sale or manufactured for sale on said premises.

The common reading of this language indicates that there is a prohibition of the sale of intoxicating liquor on lot 54. This terminology not only appeared in the first deed conveying lot 54, but also was set forth in every subsequent deed, including the initial deed that conveyed the property to the appellants. The restrictive covenants were not removed until the appellants, *sua sponte*, removed the language in the "corrective deed" filed almost two years after the property was originally transferred to them. Appellant Sinosky's testimony that she was not aware of the covenant when the property was initially transferred to appellants is of no moment. A provision in a deed restricting the use of land binds successive owners thereof, regardless of the grantee's knowledge of the restriction. *Appeal of J.C. Grille, supra.*

Appellants correctly point out that the initial map and plat of the Penn–Craft tract indicated that lot 54 was the "Co-op Store Site," and "unrestricted." However, we note that the second and all subsequent plans were not so marked. Further, the fact that every deed conveying lot 54 contained the restrictive covenants supports the trial court's conclusion that under the circumstances presented, the cov-

enants run with the land, continue indefinitely and are binding on all successors in title. We find no abuse of discretion nor error of law in the trial court's decision.[3]

Appellants' next contention is that the trial court erred in concluding that the character of the neighborhood as developed by the American Friends Service Committee and organized by the Quakers in the 1930's remains the same because descendants of some of the original developers reside there. Appellants argue that the nature of the community has moved away from the Quaker philosophy that was prevalent at the community's inception. While appellants infer that this was a "Quaker" community which opposed intoxicating liquor on the basis of moral beliefs, we do not find support for this position in the record.

Contrary to appellants' contention, there was no one religious affiliation in the Penn–Craft community. The community was made up of a variety people, differing not only in their ethnic and racial background, but also in their religious orientation. The only common thread among the community was that each family had been dependent on the coal industry and were adversely affected by the unreliable nature of their employment. The original developers of Penn–Craft were recruited to be a part of the rehabilitation of the community. The selection of the group of families that participated in the development of Penn–Craft had no relation to religious background.

Appellants have failed to show that the nature of the community has changed in any significant way. The evi-

3. As further support for the trial court's position, we note that the deeds for lots 1 through 53 contain additional restrictions not found in the deed for lot 54. As mentioned above, lots 1 through 53 were intended for residential use while lot 54 was intended for commercial use. The term "unrestricted," as lot 54 is marked on the plan, could have been an inarticulate attempt to indicate that the more stringent residential restrictions did not apply to lot 54. Given the ambiguity of the term "unrestricted" and the above plausible meaning, the clear language of the restrictions contained in each of the deeds that conveyed lot 54 would not be in conflict with the notation on the initial map and plat. This interpretation reconciles appellants' concern with regard to the apparent inconsistency between the notation on the initial plan and the intent of the parties to have the covenants run with the land.

dence produced at the hearing goes beyond the fact that many of the original developers or their descendants reside there. To the contrary, the record supports the trial court's conclusion that the community remains primarily residential with a community association, a community ball field, and monthly town meetings. The fact that alcohol is served at various residences does not affect this conclusion. The deed makes no reference to the prohibition of alcohol being served, it only prescribes the sale or manufacture for sale of alcoholic beverages. Appellants' argument to the contrary is meritless.

■ Appellants' final contention is that the trial court erred in concluding that the sale of alcoholic beverages at the appellants' restaurant would have any effect on the use and enjoyment of neighboring residential properties. Appellants claim that there was no evidence presented as to how the sale and consumption of alcohol would adversely affect the appellees' use and enjoyment of residential and community property. However, appellants appear to have ignored the trial court's memorandum. Citing our supreme court's decision in *Loeb v. Watkins*, 428 Pa. 480, 240 A.2d 513 (1968) as authority, the trial court specifically and correctly stated that the right to enforce a restrictive covenant is absolute and not dependent upon proof that plaintiffs will suffer damage or harm as a result of the breach of the covenant. We find no reason to elaborate on the trial court's resolution of this issue and find no merit to appellant's final argument.

Order affirmed.