J-S10020-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| ROBERT F. AND PENNY STAVER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID M. & JORY M. GLASER | : | No. 1102 MDA 2025 |
| | : | |

Appeal from the Order Entered July 23, 2025
In the Court of Common Pleas of Perry County Civil Division at No(s):
CV-2024-70

BEFORE:  DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.:　　　　　　　**FILED: JUNE 25, 2026**

Robert F. and Penny Staver ("the Stavers") appeal from the order entered by the Perry County Court of Common Pleas ("trial court") granting the motion for summary judgment filed by David M. and Jory M. Glaser ("the Glasers") and dismissing the Stavers' complaint seeking the enforcement of a restrictive covenant.[1]  On appeal, the Stavers argue that the trial court erred in its interpretation of the restrictive covenant at issue in this case.  Because we discern no error, we affirm.

The Stavers and the Glasers live in the Wheatfield Estates subdivision in Wheatfield Township, Perry County, Pennsylvania.  The lots in the

_____

[1]  The Glasers titled their summary judgment motion as a motion to dismiss. Both parties agree, however, that the Glasers' motion to dismiss was a motion for summary judgement.  **See** The Stavers' Brief at 1; The Glasers' Brief at 1.

Wheatfield Estates are subject to restrictive covenants, which were recorded in the Perry County Recorder's Office on May 21, 1986. Of relevance to this appeal, paragraph nine of the restrictive covenants provides as follows:

> No animals, livestock or poultry of any kind shall be raised, bred or kept on any lot, except that dogs, cats, or other household pets may be kept, provided that they are not kept, bred or maintained for any commercial purpose. Further, no house pets shall be permitted to run loose and unattended.

Complaint, 1/23/2024, Ex. A ("Restrictive Covenants"), ¶ 9 ("Livestock Prohibition"). Paragraph fifteen further provides:

> These covenants shall run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty-five (25) years from the date these covenants are recorded, after which time said covenants shall be automatically extended for successive periods of ten (10) years unless an instrument signed by a majority of the then owners of the lots has been recorded, agreeing to change said covenants in whole or in part.

Restrictive Covenants, ¶ 15.

On May 21, 2011, the Restrictive Covenants, per the terms of paragraph fifteen, automatically extended for a period of ten years, until May 21, 2021. In 2019, the Glasers announced their intention to keep horses on their property, and on June 10, 2019, the Stavers had their attorney send the Glasers a letter advising them of the Livestock Prohibition of the Restrictive Covenants. In the years that followed, the Stavers did not observe horses or other livestock on the Glasers' property. The Restrictive Covenants automatically extended again on May 21, 2021, with the current term expiring

on May 21, 2031. In the fall of 2023, however, the Stavers noticed that the Glasers had both horses and chickens on their land.

On January 23, 2024, the Stavers filed a complaint against the Glasers seeking an injunction to enforce the Livestock Prohibition of the Restrictive Covenants. On February 19, 2025, however, a majority of the property owners of the Wheatfield Estates filed with the Perry County Recorder of Deeds an amendment to the Restrictive Covenants. *See* Motion for Summary Judgment, 2/24/2025, Ex. 1 ("the Amendment"). The Amendment included the notarized signatures of owners of thirty-five lots—a majority of the Wheatfield Estates' sixty-five lots. *See id.* The Amendment, inter alia, removed the Livestock Prohibition. *See id.* ¶ 2.

Consequently, on February 24, 2025, the Glasers filed a motion for summary judgment. While the Stavers contested the motion, they did not contest the validity of the Amendment. Instead, the Stavers argued that the Amendment could not take effect until May 2031, the end of the current renewal period of the original Restrictive Covenants. On July 23, 2025, the trial court granted the Glasers' motion for summary judgment and dismissed the Stavers' complaint with prejudice.

The Stavers timely appealed to this Court. They raise a single issue for our review, contending that the trial court erred in determining that the Livestock Prohibition of the Restrictive Covenants was eliminated as of the filing of the Amendment in February 2025. *See* The Stavers' Brief at 2, 7-10.

They assert that the Restrictive Covenants could only be altered at the end of the current ten-year term, i.e., in May 2031. *See id.* at 7-10.

We review a trial court's grant of summary judgment pursuant to the following standard:

> In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: An appellate court may reverse the entry of summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is de novo.

> Therefore, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Caterpillar Fin. Servs. Corp. v. Get 'Er Done Drilling, Inc.*, 286 A.3d 302, 305-06 (Pa. Super. 2022) (citation omitted).

Both parties and the trial court agree that the general rules applicable to the interpretation of a restrictive covenant are set forth in this Court's decision in *Pocono Summit Realty, LLC v. Ahmad Amer, LLC*, 52 A.3d 261 (Pa. Super. 2012), wherein this Court explained:

> The interpretation of any contract is a question of law for the Court. As a general rule of contract interpretation, the

- 4 -

intention of the parties at the time the contract is entered into governs. The same is true in interpreting restrictive covenants. However, there is an important difference in the rule of interpretation as applied to restrictive covenants on the use of land. Restrictive covenants are limitations on a person's free and unconstrained use of property. They are not favored by the law, yet they are legally enforceable. As such, they are to be strictly construed against persons seeking to enforce them and in favor of the free and unrestricted use of property.

As a matter of law, nothing short of a plain disregard of the restrictive covenant's express terms can create violation of the covenant. In deciding whether there has been a plain disregard of a restrictive covenant, the court must rely upon the ordinary meaning of the language used in the covenant to ascertain the parties' intent, and cannot enlarge by implication a restraint on the use of land.

*Id.* at 269 (citations omitted).

The Stavers contend that the pertinent operative in interpreting paragraph fifteen of the Restrictive Covenants was "successive periods." *See* The Stavers' Brief at 9-10. The Stavers argue that "[t]he word 'period' is used in paragraph 15 initially to refer to the first, unalterable, 25 years" and that "[d]uring that 'period' no number of signatures will terminate the restriction of paragraph 9 during the 25 years." *Id.* at 9. They further assert that "[t]he word 'successive' suggests that the later periods have the character of the earlier one, that the covenant will endure to the end of the period." *Id.* The Stavers argue that the words "in whole or in part" in paragraph fifteen were "vague" and "refer simply to the fact that the restrictions are 16 in number and the [A]mendment, whenever it took effect, could change some or all of them." *Id.* at 16.

- 5 -

In support of their argument, the Stavers rely solely on this Court's decision in *Logston v. Penndale, Inc.*, 576 A.2d 59 (Pa. Super. 1989). In *Logston*, the appellants owned land in a residential community, upon which they operated a restaurant, which was subject to a restrictive covenant that prohibited them from selling liquor on the property. *Id.* at 60-61. Pursuant to the language of the restrictive covenant, it was to remain in place perpetually unless a majority of the property owners in the community revoked or modified it. *Id.* at 60. In an effort to circumvent the restrictive covenant, the appellants filed a corrected deed stating that their property was not subject to any restrictions. *Id.* at 61. The appellees filed a complaint seeking to enjoin the appellants from selling liquor at the restaurant, which the trial court granted. *Id.* On appeal, this Court affirmed, holding that the restrictive covenant prohibiting the sale of alcohol on the appellants' property ran with the land and was binding on all successive owners. *Id.* at 62.

At the outset, we point out that the legal arguments the appellants raised in *Logston* bear no relationship to the arguments the Stavers raise in this case. In *Logston*, the appellants argued that the restrictive covenant prohibiting the sale alcohol did not apply to them because they were unaware of its existence when they acquired the property, the nature of the residential community had changed since the enactment of the restrictive covenant such that it no longer served its original purpose, and the sale of alcoholic beverages at the appellants' restaurant would have no effect on the use and

enjoyment of neighboring properties. *Id.* at 63. *Logston* is therefore inapposite to this case.

Additionally, the facts of *Logston* are plainly distinguishable from the matter before us. In *Logston*, the appellants attempted to circumvent the restrictive covenant prohibiting the sale of alcohol by simply filing a corrective deed without the restriction. *See id.* at 60-62. In contrast, in this case, the Glasers actually obtained signatures from the majority of property owners of the Wheatfield Estates, which, pursuant to paragraph fifteen, was necessary to and allowed for the amendment of the Restrictive Covenants. We therefore find the Stavers' reliance on *Logston* wholly unavailing.

The trial court explained the basis for its decision as follows:

> [P]aragraph 15 of the original Restrictive Covenants states, in pertinent part, that the Restrictive Covenants are automatically extended for successive periods of ten (10) years unless an instrument signed by the majority of the then owners of the lots has been recorded agreeing to change said covenants in whole or in part.
>
> [The Stavers] in arguing that the Restrictive Covenants can only be changed at the end of a ten[-]year term are essentially arguing against the ability to change the Restrictive Covenants in whole. The plain definition of the word "whole" is, "constituting the total sum or undiminished entirety," or "each or all of the." Merriam Webster's Online Dictionary (11th Collegiate Ed. 2003). Therefore, looking to the ordinary definition of the word "whole," the [c]ourt can only conclude that the intent of paragraph 15 was to allow a majority of the owners of property in [the] Wheatfield Estates the ability to change the entirety of the Restrictive Covenants by recording an instrument to that effect. This ability to change the entirety of the covenants must naturally include the ability to end the restrictive covenant at any time if the majority of the owners are to have the ability to change the covenants "in whole."

- 7 -

Trial Court Opinion, 8/22/2025, at 3-4 (capitalization modified). In so holding, the trial court recognized that the language of paragraph fifteen was vague and ambiguous:

> The [c]ourt does acknowledge that the language in paragraph 15 indicating that the term of the Restrictive Covenants shall automatically be extended for a period of ten (10) years is seemingly at odds with the ability to change a term of the Restrictive Covenants "in whole" at any point in time. The [c]ourt believes it is a fair question to why the drafters of the Restrictive Covenants would automatically extend the restrictive covenant for certain periods of time, rather than maintain them in perpetuity, if they were going to turn around a few lines later in the same paragraph of the restrictive covenants and allow it to be changed at any point in time by use of the language "in whole."
>
> As to this question, the [c]ourt can only conclude that the language is somewhat vague. However, as was noted above in **Pocono Summit Realty, LLC**, the [c]ourt is bound to construe restrictive covenants strictly against a plaintiff seeking to enforce the covenant and in favor of the defendants' free and unrestricted use of their property.

Trial Court Opinion, 8/22/2025, at 4-5 (capitalization modified).

Following our review of paragraph fifteen of the Restrictive Covenants, we agree with the trial court that the language of paragraph fifteen is ambiguous as to whether the filing of the Amendment would immediately terminate the Livestock Prohibition or whether the Livestock Prohibition could not be terminated until May 2031. "A contract's terms are considered ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." **Toth v. Toth**, 324 A.3d 469, 486 (Pa. Super. 2024) (en banc) (citation omitted).

As stated above, paragraph fifteen states that the covenants "shall be automatically extended for successive periods of ten (10) years unless an instrument signed by a majority of the then owners of the lots has been recorded, agreeing to change said covenants in whole or in part." Restrictive Covenants, ¶ 15. This language is silent as to whether the filing of an instrument intended to alter the Restrictive Covenants takes immediate effect or does not take effect until the end of the current ten-year renewal period. **See id.** Furthermore, contrary to the Stavers assertions, nothing in paragraph fifteen signifies that the phrase "successive periods" indicated that the covenants were to endure until the end of the current ten-year period, regardless of whether the property owners filed an instrument with the signatures necessary to amend the Restrictive Covenants. **See id.**

We further agree with the trial court that the ambiguity must be construed against the Starvers, as any "ambiguity in a restrictive covenant must be construed against the one to be benefited by the restriction." **Great Atl. & Pac. Tea Co. v. Bailey**, 220 A.2d 1, 3 (Pa. 1966). Additionally, as stated above, "[r]estrictive covenants are to be strictly construed against persons seeking to enforce them and claiming benefit thereof and in favor of the free, unrestricted use of property." **Logston**, 576 A.2d at 62.

Based on the foregoing, the Stavers have provided us with no basis upon which we can conclude that the trial court erred in determining that the instrument filed on February 19, 2025, containing signatures from the

majority of the property owners of the Wheatfield Estates, terminated the Livestock Prohibition with immediate effect. Thus, we conclude that the trial court did not err in determining that there were no disputed material facts, that the Glasers' were entitled to judgment as a matter of law, and granting their motion for summary judgment on that basis.

Order affirmed.

Judgment Entered.



Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>06/25/2026</u>