**LOUIS W. EPSTEIN FAMILY PARTNERSHIP, Plaintiff,**

**Levitz Furniture Corporation, Plaintiff–Intervenor,**

v.

**KMART CORPORATION.**

Civ. A. No. 93–71.

United States District Court, E.D. Pennsylvania.

May 5, 1993.

Alan M. Black, Allentown, PA, for Epstein.

Joseph A. Fitzpatrick, Center Valley, PA, for Levitz.

Howard D. Sher, Philadelphia, PA, for Kmart Corp.

## FINDINGS OF FACT, DISCUSSION, AND CONCLUSIONS OF LAW

HUYETT, District Judge.

In December of 1992 Plaintiff Louis W. Epstein Family Partnership (Epstein) filed a complaint in the Lehigh County Court of Common Pleas against Defendant Kmart Corporation (Kmart), seeking monetary and injunctive relief. Epstein and Kmart own adjacent tracts of developed, commercial property in Whitehall Township, Lehigh County, Pennsylvania. The case arises out of a land dispute concerning the use of an easement created under a 1975 declaration of easements executed by the parties' predecessors in interest. Plaintiff's tract is landlocked and the sole access to a highway is by means of an easement, owned by Plaintiff, for ingress and egress over a portion of the property owned by Defendant. Defendant is in the process of developing its land into a shopping center. Plaintiff claims that Defendant's development plan proposes to alter Plaintiff's easement and that Plaintiff never consented to this alteration. Defendant contends that it will lawfully improve Plaintiff's easement to accommodate the increased traffic flow that will result from its development, and will benefit both parties' commercial property.

On December 11, 1992 Plaintiff filed a motion for a preliminary injunction to pre-vent Kmart from interfering with its easement rights. On December 22, 1992 the Lehigh County Court of Common Pleas issued a preliminary injunction, which it treated as ex parte, and set a date for a rescheduled hearing. Before the court could hold the hearing, Kmart removed the action to the federal courts. After assignment to this Court, I held that the state court injunction was deemed to be dissolved because it was analogous to a temporary restraining order under Rule 65(b) of the Federal Rules of Civil Procedure, and under the rule established in *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70,* 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974) it expired by operation of law on January 17, 1993, ten days after removal.

Plaintiff–Intervenor Levitz Furniture Corporation (Levitz) is a tenant of Plaintiff and has been occupying the leased premises and operating a retail furniture store and warehouse on the leased premises for almost thirty years. The leased premises are landlocked and Levitz depends upon Plaintiff's easement for access to the highway. Levitz also maintains an identification sign on Kmart's property that Kmart plans to remove. Levitz filed a complaint requesting monetary and injunctive relief along with its motion for intervention.

At the request of the parties, the Court consolidated the trial of the action on the merits with the hearing on Plaintiff's motion for a preliminary injunction. Fed.R.Civ.P. 65(a)(2). The following are the Court's findings of fact, discussion, and conclusions of law.

### I. Findings of Fact

#### A. *Parties and Background*

1. Plaintiff, Louis W. Epstein Family Partnership (Epstein), is a Pennsylvania limited partnership with its principal place of business at 923 Hamilton Mall, Allentown, Lehigh County, Pennsylvania. The general partners of the partnership are Louis W. Epstein, Myrtle Epstein, Howard Epstein, and Midge Sokol. (Stipulation of Uncontested Facts ¶ 1, received into evidence as Court Exhibit 1.)

2. Plaintiff–Intervenor, Levitz Furniture Corporation (Levitz), is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 6111 Broken Sound Parkway, N.W., Boca Raton, Florida 33487–2799.

3. Defendant, Kmart Corporation (Kmart), is a Michigan corporation with its principal place of business at 3100 West Big Beaver Road, Troy, Michigan 48084. (Ct.Ex. 1 ¶ 2.)

4. On October 21, 1975, Louis W. Epstein and Morris Epstein were the co-owners as tenants in common of certain real property located in Whitehall Township, Lehigh County, Pennsylvania, leased to Leonard Wasserman Co. and Ralph Levitz, as well as parcels immediately to the north and south of the leased premises. (Ct.Ex. 1 ¶ 3.)

5. On October 21, 1975, Louis W. Epstein and Morris Epstein divided this property between themselves, as a result of which Louis W. Epstein acquired sole ownership of the property leased to Ralph Levitz along with the property immediately to the north (Plaintiff's Property) by a deed recorded in the Recorder of Deeds Office of Lehigh County, Pennsylvania (Recorder's Office) in Deed Book Volume 1210, page 31; and Morris Epstein acquired sole ownership of the property leased to Leonard Wasserman Co. along with the property immediately to the south (Defendant's Property) by a deed recorded in the Recorder's Office in Deed Book Volume 1210, page 19. (Ct.Ex. 1 ¶ 4; Plaintiff's Exs. 1, 2.)

6. Plaintiff's Property is landlocked. (Ct. Ex. 1 ¶ 5.) Plaintiff's Property is fifteen acres in size and approximately 185 feet from State Route 145, also known as MacArthur Road. Of Plaintiff's fifteen acres, 10.5 are developed and leased to Levitz. The remaining 4.5 acres are undeveloped. (Howard Epstein Testimony Transcript 3/8/93 at 21–22.)

7. On October 21, 1975, Louis W. Epstein and Myrtle Epstein, his wife, and Morris Epstein entered into a declaration of easements, which was recorded in the Recorder's Office in Miscellaneous Book Volume 391, page 697. (Ct.Ex. 1 ¶ 6; Pl.Ex. 3.)

8. The declaration of easements established an easement over Defendant's Property which consists of an area 30,859 square feet in size for the purpose of ingress, egress, and regress to both Plaintiff's and Defendant's properties. (Ct.Ex. 1 ¶ 7; Pl.Ex. 3.) The easement area is one hundred feet wide at MacArthur Road. The MacArthur Road curb is depressed to form a driveway that provides approximately a thirty-five foot wide lane for ingress from MacArthur Road and approximately a thirty-five foot wide lane for egress to MacArthur Road. The easement area narrows to fifty feet at a right angle from the 100 foot wide area. Part of the fifty-foot wide portion of the easement is unpaved. (Epstein Test.Tr. 3/8/93 at 23; Kevin Johnson Test.Tr. 3/9/93 at 15; Pl.Ex. 4; Def.Ex. 8.)

9. Plaintiff is the successor in title and immediate grantee of Louis W. Epstein with respect to Plaintiff's Property. (Ct.Ex. 1 ¶ 8.)

10. Defendant is the successor in title to Morris Epstein with respect to Defendant's Property. (Ct.Ex. 1 ¶ 9.)

11. Defendant acquired title to its property on November 4, 1992. (Ct.Ex. 1 ¶ 10.)

12. Prior to closing on Defendant's Property, Defendant was aware of Plaintiff's easement rights and Levitz's easement rights over Defendant's Property. (Ct.Ex. 1 ¶ 11; Shanus Test.Tr. 3/9/93 at 115.)

13. Levitz has been leasing a portion of Plaintiff's Property since December 1962, commonly known as 650 MacArthur Road and 2650 MacArthur Road, Allentown, Lehigh County, Pennsylvania on which Levitz has built a retail furniture store and warehouse. (Def.Exs. 2, 3; George Sodl Test.Tr. 3/8/93 at 75–76.)

14. Levitz has been a tenant occupying the leased premises since 1962, conducting its retail furniture sales business.

15. Epstein and Levitz extended the lease in 1991 for an additional term of ten years, commencing October 1993.

16. The leased premises are landlocked and Levitz's retail store is located approxi-

mately five hundred feet from MacArthur Road. (Johnson Test.Tr. 3/9/93 at 15.)

17. MacArthur Road affords the only access to Levitz's retail furniture store. (Epstein Test.Tr. 3/8/93 at 22.)

18. Defendant is in the process of developing Defendant's Property into a shopping center known as the "MacArthur Towne Centre." (Ct.Ex. 1 ¶ 12.)

19. In connection with this development, Defendant recorded a ReSubdivision, Subdivision and Land Development Plan—Richard L. Bowen and Associates with the Recorder's Office at Map Book Volume 31, page 15. (Ct.Ex. 1 ¶ 13; Pl.Ex. 4.)

20. Prior to the initiation of this development, Defendant commissioned a study of the impact that its planned development would have on existing traffic and site conditions, and modifications that would be necessary to bring the development into compliance with state and local highway safety and land development regulations.

21. The results of the study commissioned by Defendant are set forth in documents known as "Study of a Signalized Intersection and Median Break on MacArthur Road," and "Technical Appendix for Study of a New Signalized Intersection and Median Break on MacArthur Road." (Def.Ex. 4.)

22. These studies were compiled in June 1990 by Orth–Rodgers & Associates, Inc., experts on traffic, highway, and site engineering. (Edward K. Peers Test.Tr. 3/17/93 at 24–25.)

23. Orth–Rodgers & Associates, Inc. also produced plans including pavement marking plans known as "Orth Rodgers Sheets 13 through 16," reflecting site changes necessitated by Kmart's planned development. (Pl. Ex. 5.)

24. The "Orth Rodgers Sheets 13 through 16" incorporate by reference designs by Spotts, Stevens and McCoy known as "Jughandle and Median Break—Vornado Properties." (Def.Ex. 1.)

25. Defendant's proposed development and modifications to Plaintiff's right of way and adjacent highway have been approved by the Planning Commission of Whitehall Township, the Board of Commissioners of Whitehall Township, the Joint Planning Commission of Lehigh and Northampton Counties, and the Pennsylvania Department of Transportation (PennDOT). (Pl.Ex. 4; Levitz Exs. 1, 2.)

26. Defendant applied for and received a highway occupancy permit from PennDOT to perform the development of its land into a shopping center.

27. Defendant has developed a plan for the ingress and egress of vehicular and pedestrian traffic for both Plaintiff's Property and Defendant's Property to and from MacArthur Road. (Pl.Ex. 4.)

28. Defendant's plan provides for the installation and erection of concrete curbs and various traffic control devices within the easement area, including concrete barriers, directional signals, and lane demarcation lines. (Pl.Exs. 4, 5, 6; Johnson Test. 3/9/93.)

29. The proposed modifications to the right of way, the adjacent highway (MacArthur Road) and Defendant's adjacent land are as follows: curbing, a median strip sixteen feet wide, a triangle barrier, and traffic signals will be installed on the right of way, so that traffic will flow freely to and from the parties' properties; the median strip currently existing on MacArthur Road will be opened to allow traffic flowing north on MacArthur Road to turn left by a "jughandle" into the parties' properties; four lanes will be constructed for egress from the properties and three lanes will be constructed for ingress to the properties; Levitz's sign will be removed and relocated to allow for the construction of a deceleration lane on MacArthur Road; and "jughandles" will be installed on the Vornado Properties and the Kmart Property to permit easy turnaround. (Johnson Test.Tr. 3/9/93; Peers Test.Tr. 3/17/93; Pl.Ex. 4.)

30. Although the plan calls for three lanes of ingress from MacArthur Road, direct access to the property owned by Plaintiff and leased by Levitz for vehicular traffic from MacArthur Road is limited under Defendant's plan to a single lane of travel fourteen feet in width. The other two lanes would direct traffic into Kmart's proposed

shopping center. (Epstein Test.Tr. 3/8/93 at 53; Pl.Exs. 4, 6.)

31. Direct access from the property owned by Plaintiff and leased by Levitz for vehicular traffic to MacArthur Road is limited under Defendant's Plan to one lane of travel fourteen feet in width at first, which then turns left and widens to four lanes of travel. (Pl.Exs. 4, 6.)

32. Defendant has not yet begun construction in the easement area, but intends to construct the easement area in accordance with the land development plan. (Ct.Ex. 1 ¶ 15; Harvey Shanus Test.Tr. 3/9/93.)

B. *Express Easement Issues*

33. The Declaration of Easements provides that the easement is established "for the purpose of ingress, egress, and regress for all persons, motor vehicles, equipment, material and supplies to and from [Plaintiff's Property] to and from MacArthur Road." (Pl.Ex. 3 at 2.)

34. The Declaration of Easements further provides that "[n]o barriers, fences, curbs or other obstruction to the free and unhampered use of said easement area and right of way shall hereafter be permitted nor shall any building or other structure be constructed upon any part of the said easement area or right of way." (Pl.Ex. 3 at 2.)

35. The rights and privileges created under the Declaration of Easements "extend not only to the record owners of the lands described in the aforementioned deed but also in favor of . . . any tenants to whom they may grant rights and privileges under this easement. . . ." (Pl.Ex. 3 at 4.)

36. The Declaration of Easements provides that the easement and right of way "shall run in perpetuity with the land subject to the terms and conditions stated in this Declaration." (Pl.Ex. 3 at 2.)

37. The "easement and right of way may be terminated and forever extinguished or altered, modified or limited by a writing . . . executed by the then record owners of the lands described in the aforementioned deed. . . ." (Pl.Ex. 3 at 5.)

38. Plaintiff has not consented to Defendant's land development plan and objects to the plan to the extent that it affects the easement area. Howard Epstein, a general partner of Plaintiff, first learned of the development plan from a newspaper article in early 1991. Howard Epstein telephoned Mark L. Blevins, Esquire, Vice President and Counsel of Mark Development Co., the owner of Defendant's Property at that time, on February 28, 1991 to request a copy of the proposed development plan. In early July 1991, Mr. Blevins asked Mr. Epstein to consent to a relocation of Plaintiff's easement. Following a series of telephone calls and letters between these two individuals, Howard Epstein sent a facsimile transmission to Harvey Shanus, President of Mark Development Co., on July 31, 1991. The development plan called for three lanes of ingress from MacArthur Road, but only one lane turning into Plaintiff's Property. Howard Epstein requested that two lanes turn into Plaintiff's Property, and sent Mr. Shanus a drawing showing Mr. Epstein's proposed plan. The additional lane would fall outside of Plaintiff's easement area and onto Defendant's Property. In response, that same day Mr. Shanus sent a facsimile to Mr. Epstein with a proposal, but Mr. Epstein telephoned Mr. Shanus and stated that the proposal was unacceptable. On August 2, 1991 Mr. Epstein wrote a letter to Mr. Blevins that stated Mr. Epstein's position that Mark Development's plans violated Plaintiff's easement rights and were not acceptable. On August 14, 1991 Mr. Blevins responded that two exclusive lanes of ingress to Plaintiff's Property from MacArthur Road was not acceptable to Whitehall Township and PennDOT. On August 20, 1991 Mr. Shanus suggested that Mr. Epstein present his plan to the township and PennDOT. That was the last conversation between Mr. Epstein and a representative of Mark Development Co. (Epstein Test.Tr. 3/8/93 at 25–44.)

39. In early November 1992 Mr. Epstein learned that Kmart had acquired Defendant's Property by reading an article in a local newspaper. On November 11, 1992 Mr. Epstein called Kmart's counsel in Michigan to discuss the problem concerning the easement area. Plaintiff and Defendant were unable

**336**

resolve their disagreements. (Epstein Test. Tr. 3/9/93 at 3.)

40. Plaintiff–Intervenor has not consented to Defendant's land development plan and objects to the plan to the extent that it affects the easement area.

41. Defendant's intended construction substantially interferes with the free and full use by Plaintiff and Plaintiff–Intervenor of the entire easement.

42. Plaintiff will be immediately and irreparably harmed by Defendant's obstruction, reduction, and limitation of the easement area. Defendant's plan substantially interferes with the flow of traffic into and out of Plaintiff's Property. Currently, Plaintiff has an unobstructed area 100 feet wide that narrows to fifty feet for ingress and egress to and from its property. Defendant's plan calls for placement of curbing in the easement area, a concrete median barrier near the center of the 100 foot wide part, a triangle barrier, and ultimately one fourteen foot lane for ingress into Plaintiff's property and, initially at least, one fourteen foot lane for egress towards MacArthur Road. It is impossible to determine what Plaintiff's Property will be worth with only one lane of ingress to the property.

43. Plaintiff–Intervenor will be immediately and irreparably harmed by Defendant's obstruction, reduction, and limitation of the easement area. Customers wishing to patronize Levitz will be restricted to one lane of exclusive ingress to the property. Levitz customers and delivery trucks will share that one lane of ingress with customers and delivery trucks bound for Outparcel 3. In addition, tractor-trailers, or "18 wheelers," are among the many kinds of trucks used to deliver furniture to the Levitz store. These large trucks make wide turns and will need to use one of the other two lanes of ingress to complete their turn. They then will move into the exclusive one lane access to Plaintiff's Property. This will impede other vehicles who wish to enter Plaintiff's Property and will interfere with traffic on MacArthur Road. (Johnson Test.Tr. 3/9/93 at 25–29.)

### C. Levitz Sign Issues

44. Since 1963, Plaintiff–Intervenor Levitz has maintained a steel-frame, electrified entrance identification sign on the MacArthur Road frontage of Kmart's property at the point of ingress to its store, just north of the easement area. (Sodl Test.Tr. 3/8/93 at 77.)

45. This sign is the only sign for Plaintiff–Intervenor's store on the frontage of MacArthur Road. (Sodl Test.Tr. 3/8/93 at 91.) The only other sign for the Levitz store is located on the storefront.

46. Because of its physical location, the Levitz retail furniture store is not readily visible from MacArthur Road. A gas station is situated between MacArthur Road and the Levitz store. (Sodl Test.Tr. 3/8/93 at 88.) Construction trailers on Defendant's property sit in front of the store and partially obstruct the view of the store. (Id. at 93.) Defendant's plans call for construction of two retail stores (identified as Retail D and Major Retail E on Pl.Ex. 4) that would obstruct the view of the Levitz store from MacArthur Road. (Sodl Test.Tr. 3/8/93 at 90.)

47. The term "site distance" refers to how far in advance a person can see a "decision point" such as a car, sign, or traffic light. The site distance for a motorist traveling northbound on MacArthur Road to see the Levitz storefront sign is 1,125 feet. The site distance for a motorist traveling northbound on MacArthur Road to see the Levitz freestanding sign adjacent to MacArthur Road is 1,400 feet. If Defendant removes the Levitz freestanding road sign and constructs buildings designated Retail D and Major Retail E on the development plan, a motorist traveling northbound on MacArthur Road would not be able to see the Levitz storefront sign until that motorist was past the point at which the motorist would have had to turn into the proposed Vornado jughandle to gain access to the Levitz store. (Johnson Test.Tr. 3/9/93 at 5–25.)

48. The sign located on Defendant's property is reasonably necessary to alert potential customers to the location of Levitz. The sign is the only indication that the easement area is the driveway to the Levitz store.

The sign is an important indication from MacArthur Road that the building occupied by Levitz is a Levitz furniture store.

49. The occupation of the land by Levitz's sign has been open, visible, permanent, and continuous for thirty years. Levitz erected the sign in 1963, with the permission of the owners of the property. (Sodl Test.Tr. 3/8/93 at 99–100.) The sign has not been moved since 1963. Levitz has paid for the electricity to run the sign and has paved the area around the sign, painted the sign, and refaced it over this thirty year period. (Sodl Test.Tr. 3/8/93 at 79–82; Levitz Exs. 3, 4.)

50. The continued occupation of Kmart's land by Levitz's sign is reasonably necessary to Levitz's use and enjoyment of the leased premises.

51. The land development plan recorded by Defendant provides: "Existing Levitz Furniture Sign To Be Relocated As Directed By Developer," in a notation set forth next to the sign's present location. (Pl.Ex. 4.)

52. Defendant intends, in the immediate future, to remove the Levitz sign from its present location adjacent to MacArthur Road. (Shanus Test.Tr. 3/9/93 at 138.)

53. Defendant has not stated where it will relocate the Levitz sign. Defendant has stated that it will not relocate the sign on its properties along MacArthur Road. (*Id.* at 166–67.)

54. Defendant's removal of the Levitz freestanding sign will disrupt Levitz's business and will cause Levitz to sustain serious harm. Persons driving on MacArthur Road who have never shopped at Levitz before would not know that the store is a Levitz furniture store without the presence of Levitz's electrified sign. Levitz's ability to attract new customers would suffer, thereby causing harm to its business.

55. Defendant's actions will cause immediate and irreparable harm to Plaintiff–Intervenor for which no adequate remedy at law exists. It is impossible to measure the value of Levitz's property without the freestanding sign.

56. Neither Kmart nor its development agent, Mark Development Company, has ever contacted Levitz with respect to the existence or relocation of Levitz's roadside identification sign. (Sodl Test.Tr. 3/8/93 at 86–87.)

57. Levitz's roadside sign was obvious to Defendant and its development agent at all times when Defendant and its agents visited Defendant's property.

58. Neither Defendant nor its development agent ever informed Levitz that a notation would be placed on Defendant's land development plan stating that they would relocate Levitz's sign. (*Id.*)

59. It was not until January 1993 that Levitz's store manager, George Sodl, in a chance occurrence, saw the sign relocation notation on a site plan located in Defendant's construction trailer. (Sodl Test.Tr. 3/8/93 at 82–83.)

60. Defendant, and its predecessors in title, had never acted in a manner that would have led Levitz to believe that its sign would be removed or relocated. (*Id.* at 96.)

## II. Discussion

### A. *Permanent Injunction Standards*

■ Before a court may grant permanent injunctive relief, a plaintiff must establish that (1) the court's exercise of equity jurisdiction is proper, *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 750–751, 27 L.Ed.2d 669 (1971); (2) the plaintiff has actually succeeded on the merits of the claim; and (3) the balance of the equities weighs in favor of injunctive relief. *Ciba–Geigy Corp. v. Bolar Pharmaceutical Co.,* 747 F.2d 844, 850 (3d Cir.1984), *cert. denied,* 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985). The court has equity jurisdiction if the plaintiff has no adequate remedy at law, the threatened injury is real as opposed to imagined, and no equitable defenses preclude the exercise of jurisdiction. *Younger,* 401 U.S. at 43–44, 91 S.Ct. at 750–51.

### B. *Equity Jurisdiction Is Proper*

■ A plaintiff has no adequate remedy at law if the injury is of a repeated or continuing character or where monetary damages are difficult to ascertain or are inadequate. *Glasco v. Hills,* 558 F.2d 179, 181

(3d Cir.1977); *Stuart v. Gimbel Brothers, Inc.,* 285 Pa. 102, 131 A. 728 (1926). Here, Defendant's development plan calls for the erection of a median barrier, a triangle barrier, curbs, ingress to Plaintiff's Property via a single fourteen foot wide lane of traffic, and egress to MacArthur Road initially by a single fourteen foot wide lane of traffic. The injury to both Plaintiff and Plaintiff–Intervenor will be of a continuing nature, and the damages to both parties cannot be estimated in monetary terms with reasonable certainty. The threatened injury to Plaintiff and Plaintiff–Intervenor is real as opposed to imagined. Construction of the MacArthur Towne Centre is already underway and, although construction in the easement area has not yet begun, Defendant intends to construct in the easement area in accordance with the land development plan. Finally, there are no equitable defenses to preclude the exercise of this Court's jurisdiction.

### C. *The Merits of the Claims*

#### 1. Express Easement

▇▇▇ In the case of an easement created by express grant, the rights and liabilities of the parties are determined by the terms of the agreement conveying the interest as interpreted by applying general principles of contract law. *Hann v. Saylor,* 386 Pa.Super. 248, 562 A.2d 891, 893 (1989). To ascertain the nature of the easement created by an express grant, the court should determine the intention of the parties by looking at the language of the instrument. *Merrill v. Manufacturers Light & Heat Co.,* 409 Pa. 68, 185 A.2d 573, 575 (1962). If the terms of the easement are ambiguous the court should construe the express easement in favor of the grantee. *Hammond v. Hammond,* 258 Pa. 51, 101 A. 855 (1917). Here, the parties created the easement by express grant. The terms of the agreement are unambiguous. The Declaration of Easements describes precisely the easement area. The Declaration states that the purpose of the easement is for ingress, egress, and regress and that no obstructions to the free and unhampered use of the easement area and right of way are permitted.

▇▇▇ The owner of land who grants a right of way over it conveys nothing but the right of passage, and reserves all incidents of ownership not granted. *Mercantile Library Co. v. Fidelity Trust Co.,* 235 Pa. 5, 83 A. 592, 595 (1912). The owner of the servient tenement has the right to make use of his property as he chooses if, by so doing, he does not "substantially interfere" with the easement. *Id.* The owner of the dominant estate has the free and full use of the entire easement granted. *Hann v. Saylor,* 386 Pa.Super. 248, 562 A.2d 891, 894 (1989). Each party to the easement agreement "has a right to insist that the terms of the agreement be complied with and that, so long as the easement is enjoyed, it shall remain substantially as it was at the time the right accrued, regardless of whether benefit or damage will result from a proposed change." *Piro v. Shipley,* 211 Pa. 36, 60 A. 325, 329 (1905). When the character of an easement is fixed no material alterations can be made by either the servient or easement owner without the other's consent. *Weiss v. Williams,* 57 Luz.L.Reg. 257 (Pa.Comm.Pl. 1967).

Applying the law just described, the Declaration of Easements describes precisely the easement area. The easement area is 100 feet wide in part and 50 feet wide in part. Plaintiff, as the grantee or dominant estate owner, is asserting its right to insist that Defendant Kmart, the servient estate owner, comply with the terms of the Declaration of Easements. Plaintiff wants the easement to remain unchanged, notwithstanding Kmart's contention that Plaintiff and others will benefit from the change. Defendant's changes to the easement constitute a material alteration of the easement without Epstein's consent and substantially interfere with the easement.

▇▇▇ Kmart asserts that the proposed modifications to the easement will not substantially interfere with Epstein's use of the easement; Epstein will still have the right of ingress and egress over the land without obstruction. Plaintiff, however, points to two cases that show that he as owner of the dominant estate has the free and full use of the entire easement granted, not just a por-

tion of the original easement. In *Kinzey v. Marolt*, 288 Pa.Super. 426, 432 A.2d 234 (1981) the defendants encroached upon a fifty foot wide easement in favor of the plaintiff by placing trailers and power lines in the easement area. The trial court ordered that defendants keep twenty-five feet of the fifty foot easement free and clear from any obstructions in the future. The Superior Court reversed, holding that the owner of the dominant estate had an easement over the entire fifty feet and that the trial court erred in limiting the prohibition against obstruction of the easement to only twenty-five feet. In *Scoppa v. Myers*, 341 Pa.Super. 61, 491 A.2d 148 (1985) the trial court again limited the owner of the dominant estate to only fifteen feet of a twenty foot easement. The Superior Court again reversed. The court observed that the trial court obviously attempted to achieve a compromise solution satisfactory to all parties, but the compromise was achieved at the expense of plaintiff's legal right to an easement twenty feet in width. Kmart attempts to distinguish these cases on the ground that they involved obstructions of the easements and that here Kmart will not obstruct Epstein's or Levitz's use of the easement. Kmart's position is problematic. Kmart seems to be saying that even if the original easement provides for a passageway 100 feet wide, the servient owner can reduce the passageway to 50 feet and that is not a violation of the easement rights of the dominant owner as long the dominant owner still has an unobstructed passageway. This is a clear violation of the easement. If someone contracts for an easement 100 feet wide, it does not follow that his rights have not been substantially interfered with when the easement is narrowed to fifty feet. Here, although Kmart's development plan will not completely obstruct the use of the easement for ingress, egress, and regress, the plan will reduce the area for ingress into Plaintiff's Property to one fourteen foot wide lane. The Court concludes that this is a substantial interference with the easement. In addition, the erection of curbs, barriers, and other obstructions in the easement area also constitutes a substantial interference with the easement.

The Declaration of Easements describes precisely the easement area. Kmart's plan calls for a material alteration of the easement area. The agreement gives Epstein an easement of a certain width. Epstein has not consented to any change in the easement. Epstein has a right to insist that Kmart comply with the terms of the easement even if Kmart asserts that benefit, not damage, will result from the change.

The Court has considered the cases cited by Kmart in which courts found that alterations to and modifications of easements by the servient landowner did not substantially interfere with the dominant landowner's easement rights and therefore refused to issue an injunction. These cases can be distinguished from the facts of this case. For example, the court in *Asko v. Cianciulli*, 72 Montg.Co.L.R. 529 (1956) refused to enjoin the placing of an advertising sign by the defendant on the plaintiff's right of way because the road was unopened and not used. Therefore, there was no interference with plaintiff's rights at that time. Here, the right of way is opened and used by Plaintiff and Plaintiff–Intervenor. In *Moyer v. Lee*, 48 Del.Co. 161 (1960) the defendants paved a portion of the plaintiff's easement on the defendant's property to use as a driveway. The plaintiff claimed that the defendants interfered with the use of her easement and asked the court to issue an injunction ordering the defendants to restore the easement to its original condition. The court refused to grant the relief requested because the plaintiff failed to prove that the right of way in its unpaved condition was of any use to her. Here, in contrast, the easement in its present condition is of substantial benefit to Epstein and Levitz. The Court agrees with the principle stated in *Smith v. Dahr*, 83 Dauph. 349, 357 (1965) that the owners of an easement are not entitled to have the easement remain subject to the same identical condition in which it existed at the time the easement was created so long as their right to cross over it is not interfered with. The *Smith* court held that changing the slope and grade of the easement was not a substantial interference with the easement, but that the placing of barriers and excess fill in the easement did substantially interfere with the plaintiffs'

easement rights. Under the circumstances of the instant case, however, Defendant's proposed changes to Plaintiff's easement do constitute a substantial interference with Plaintiff's easement rights. The changes contemplated here are more of an interference than the placing of two speed bumps on a roadway. *See Wagner v. Woolverton,* 57 D. & C.2d 257 (1972).

Kmart states that courts have granted injunctive relief only where the plaintiff showed that a defendant's modifications of the easement frustrated the purpose of the easement. Kmart claims that the purpose of the easement at issue is to provide ingress, egress, and regress to and from Plaintiff's landlocked property and MacArthur Road, and that none of its modifications will frustrate that purpose. I acknowledge that if Kmart builds according to its plan, Epstein and Levitz will continue to have access to Plaintiff's Property, but the changes that Kmart intends to make alter fundamentally the rights of the parties pursuant to the 1975 easement.

## 2. Real Covenant

The 1975 Declaration of Easements constitutes a covenant running with the land. Pennsylvania law requires neither formal nor specific technical language for a covenant running with the land. *Logston v. Penndale, Inc.,* 394 Pa.Super. 393, 576 A.2d 59 (1990) (citing, *Electric City Land & Improvement Co. v. Westridge Coal Co.,* 187 Pa. 500, 41 A. 458, 462 (1898)). "An easement created by grant, or its equivalent, is in nature and substance a covenant running with the land." *Pennsylvania Game Comm'n v. Bowman,* 81 Pa.Cmwlth. 381, 474 A.2d 383, 387 (1984) (citing *Goldberg v. Nicola,* 319 Pa. 183, 178 A. 809 (1935) and *Ozehoski v. Scranton Spring Brook Water Co.,* 157 Pa.Super. 437, 43 A.2d 601 (1945)). To construe a restrictive covenant, a court ascertains the intentions of the parties by examining the language of the covenant in light of the subject matter, the apparent purpose of the parties, and the conditions surrounding the execution of the covenant. *Gey v. Beck,* 390 Pa.Super. 317, 568 A.2d 672, 675 (1990). Here, the language of the Declaration of Easements creates a covenant running with

the land because it provides that the "easement and right-of-way shall run in perpetuity with the land subject to the terms and conditions stated in this Declaration...." Declaration of Easements at 2. In addition, the rights and obligations of the Declaration of Easements extend to the successors, heirs, and assigns of the parties, Declaration of Easements at 2, 4, which is another indication that the Declaration of Easements creates a covenant running with the land. *Leh v. Burke,* 231 Pa.Super. 98, 331 A.2d 755 (1974).

Restrictive covenants are not favored in the law and a court should construe them strictly if they are useless from the standpoint of practical utility. If a covenant has practical utility, however, a court need not look upon it with disfavor. *Gey v. Beck,* 568 A.2d at 676–77.

If a violation of a restrictive covenant is mistaken or inadvertent, and for example, an encroachment on an easement did not materially affect the easement owner's use of the easement, then the owner's mere legal right to the easement would not necessarily justify an injunction. *Id.* at 677. If, however, a violation of a restrictive covenant is intentional, then a court should grant an injunction. A violation is intentional if it is "willful and deliberate," or if the court believes that the violator "intentionally took a chance." *Id.* at 678. Thus, "whereas in a case involving an unintentional violation of a restriction on land the chancellor must engage in a balancing of the harm that results from the violation against the harm that would result from issuing an injunction to remedy the violation, in a case involving an intentional violation application of a balancing test is improper." *Id.*

Even where a violation of a restrictive covenant is intentional, the court should not issue an injunction

unless it will result in a significant benefit to the beneficiary of the covenant. However, the benefit shown must only consist in the benefit that the covenant was originally intended to convey. The party opposing enforcement has the burden of showing that significant benefit no longer

exists.... The fact that the benefit to result from enforcement may be relatively small is irrelevant where the violation was intentional.

*Id.* at 679.

The 1975 Declaration of Easements establishes an area of precise dimensions for the purpose of ingress, egress, and regress to and from the landlocked Plaintiff's Property and to and from MacArthur Road. Declaration of Easements at 2. Furthermore, it expressly prohibits the erection of barriers, fences, curbs or other obstructions to the free and unhampered use of the easement and right of way. *Id.* The Court does not look with disfavor upon this restrictive covenant because it has practical utility—it enables Plaintiff and its tenant, Levitz, and its customers to gain access to the landlocked property. Defendant Kmart will engage in an intentional violation of this restrictive covenant because it intends to construct curbs, barriers, and other obstructions in the easement area in accordance with its land development plan. Defendant knew about the existence of this easement when it acquired the property, yet it has chosen to "take a chance" and proceed with its shopping center development. Enforcement of the covenant by the issuance of an injunction will result in a significant benefit to the beneficiaries of the covenant, Epstein and Levitz. The restrictive covenant was intended to convey the benefit of free and unhampered use of the easement for ingress, egress, and regress to Plaintiff's landlocked property so that Plaintiff and his tenant could fully enjoy the use of that property. Enforcement of the covenant will ensure that Epstein and Levitz continue to have full and free use of the entire easement area for ingress and egress to and from the landlocked property.

### 3. State Highway Regulations

■ Kmart argues that the alterations to the easement are consistent with the regulations issued by, and have been approved by, the Pennsylvania Department of Transportation, as required by state law. Kmart asserts that if it had not complied with these safety regulations in designing the right of way from MacArthur Road, but had instead permitted the easement to remain as it is

today, the right of way would not only pose a safety hazard, but also would exist in violation of state law governing highway safety. Epstein's and Levitz's simple answer is this: PennDOT safety regulations cannot supersede the rights of third persons. The regulations provide that "[a]ll work authorized by the permit shall be subject to ... any rights of any person." 67 Pa.Code § 441.6(2)(ii). "Any rights" would include contractual rights and easement rights. The Code defines "person" to include a partnership and a corporation. 67 Pa.Code § 441.1. Any potential problems regarding the safety and flow of traffic has been created solely by Kmart when it decided to construct the MacArthur Towne Centre. Kmart cannot now use such considerations to alter Epstein's and Levitz's easement rights.

### 4. The Levitz Sign

■ Plaintiff–Intervenor Levitz seeks a permanent injunction prohibiting Kmart from removing its freestanding electrified entrance sign on the MacArthur Road frontage of Kmart's property adjacent to the easement in question that it erected in 1963 and has maintained ever since. The sign alerts potential customers to Levitz's location because the Levitz store is not readily visible from MacArthur Road. Equity jurisdiction is proper. Levitz has no adequate remedy at law because it is not possible to measure the value of Levitz's property without the sign. The threatened injury is real as opposed to imagined because Defendant intends to remove the sign in the immediate future. Finally, there are no equitable defenses to preclude the exercise of equity jurisdiction.

■ I turn now to the merits of Levitz's claim. An easement may be created in three ways: by prescription, by express grant, or by implication. *Restatement of Property* §§ 457–76 (1944). There is no express easement for Levitz's sign. The 1962 and 1967 leases in evidence in this case, between the lessor, DML Realty, the predecessor in interest of Plaintiff, and the lessee, Levitz, state that the lessee shall not install or erect any exterior signs without the written consent of the lessor. (Def.Exs. 2 and 3 at 6–7.) In 1963 Levitz erected the exterior sign,

apparently with the oral consent of the lessor. The sign remained on the land owned in common by Louis and Morris Epstein. In 1975 when Louis and Morris divided their land, Louis obtained the land on which Levitz's store was located and Morris obtained the land upon which Levitz's sign was located. The parties did not create an express easement for the sign.

■■■■■ To establish an easement by prescription the use must have been adverse, open, continuous, notorious, and uninterrupted for a period of twenty-one years. *Keefer v. Jones*, 467 Pa. 544, 359 A.2d 735 (1976). Levitz's use of the land for its sign was initially permissive and thus fails to satisfy the adversity requirement.

■■■■■ Therefore, any easement that Levitz has for its sign must arise by implication. Pennsylvania courts have used two tests to determine whether an easement has been created by implication. The traditional test requires separation of title, open, visible, continuous, and obvious use before the separation to show that it was meant to be permanent, and proof that the easement is necessary to the beneficial enjoyment of the property granted or retained. *Mann–Hoff v. Boyer*, 413 Pa.Super. 1, 604 A.2d 703, 706–07 (1992). Under Pennsylvania law, it would appear that absolute necessity is not required; rather the test is reasonable necessity such that the land cannot be conveniently or beneficially used without the easement. *Hann v. Saylor*, 386 Pa.Super. 248, 562 A.2d 891, 893 n. 1 (1989).

■■■■■ Applying the traditional test to the facts of this case, there was a separation of title in 1975 when Louis Epstein obtained sole ownership of the land upon which the Levitz store is found and Morris Epstein obtained sole ownership of the land upon which Levitz had erected its sign. Before the separation of title the presence of the Levitz sign was open, visible, obvious, and continuous since 1963. Levitz has proven that the presence of its sign on MacArthur Road is reasonably necessary to the beneficial enjoyment of the property for its retail furniture sales business. The Levitz furniture store is located 500 feet from MacArthur Road. A gas station and Defendant's construction trailers partially obscure the view of the store from the road. Kmart's land development plan calls for the construction of two retail stores that would obstruct the visibility of the Levitz store for northbound travelers on MacArthur Road. Without the sign, motorists traveling northbound on MacArthur Road would be unable to locate the Levitz store and react in time to make the proper turn to gain entrance to the shopping center. If the Court allowed Kmart to remove the Levitz sign, Levitz's ability to alert potential customers to the presence of its store would be severely diminished and hence would threaten its commercial viability.

■■■■■ Pennsylvania courts have also approved the doctrine expressed in the *Restatement of Property* § 474 (1944) that when title to land is divided by a conveyance, an easement may be created by implication solely from the circumstances under which the conveyance was made. *Mann–Hoff v. Boyer*, 413 Pa.Super. 1, 604 A.2d 703, 707 (1992) (citing cases). The Restatement "emphasizes a balancing approach, designed to ascertain the actual or implied intention of the parties" to create an easement. *Thomas v. Deliere*, 241 Pa.Super. 1, 359 A.2d 398, 400 n. 2 (1976). The Restatement provides several factors to determine whether the circumstances under which a conveyance of land is made imply an easement:

(a) whether the claimant is the conveyor or the conveyee,

(b) the terms of the conveyance,

(c) the consideration given for it,

(d) whether the claim is made against a simultaneous conveyee,

(e) the extent of the necessity of the easement to the claimant,

(f) whether the reciprocal benefits result to the conveyor and the conveyee,

(g) the manner in which the land was used prior to its conveyance, and

(h) the extent to which the manner of prior use was or might have been known to the parties.

*Restatement of Property* § 476 (1944). No single factor is dispositive. *Thomas*, 359

A.2d at 400 n. 2. The Superior Court has further stated that an easement by implication can be found only "where the intent of the parties is clearly demonstrated by the terms of the grant, the surroundings of the property and other res gestae of the transaction." *Mann–Hoff*, 604 A.2d at 707 (quoting *Hann v. Saylor*, 386 Pa.Super. 248, 562 A.2d 891, 893 (1989)).

Applying the Restatement factors to the facts of this case, the circumstances of the division of the property between Louis and Morris Epstein in 1975 imply an easement for Levitz's sign. Turning to factor (a), the claimant, Levitz, was neither the conveyor nor the conveyee. Applying factor (b), the terms of the conveyances between Louis and Morris Epstein are silent with respect to the Levitz sign. On the other hand, there is no language in the deeds to negate the implication of an easement for the sign. With respect to factor (c), consideration did pass between Louis and Morris for their properties, see Pl.Exs. 1 and 2, but under the circumstances of this case, it does not appear helpful in the analysis. Likewise, factor (d) is not relevant in this case.

Factor (e), the extent of necessity of the easement to Levitz is a critical factor in the Restatement analysis. "If the necessity of an easement is such that without it the land cannot be effectively used, nothing less than explicit language in the conveyance negating the creation of the easement will prevent its implication." *Restatement of Property* § 476 cmt. g (1944). The facts of this case demonstrate that without its freestanding sign on MacArthur Road, Levitz cannot effectively operate its retail furniture store. To have a retail store located 500 feet back from a major highway on a landlocked tract with no roadside signage would be commercially devastating.

According to the Restatement,

[t]he manner in which land was used prior to its conveyance is important in determining whether an easement was intended to be created by the conveyance. The fact that it was used in a particular way is some indication that the parties contemplated its use in a similar way thereafter.... The fact that a use has been made may justify the inference that it was intended to continue though the degree of necessity existing is less than would be required for the implication of an easement on the basis of necessity alone.

*Id.* cmt. i. Here, the land in question was used for Levitz's sign for twelve years prior to the separation of title between Louis and Morris Epstein in 1975. After the separation, Levitz's sign remained without objection from Morris Epstein, continued to remain when Kmart acquired the property in 1992, and remains there to this day. Finally, factor (h), the extent to which the manner of prior use might have been known to the parties, weighs in favor of an implied easement. As the Restatement notes, "[p]arties to a conveyance may ... be assumed to intend the continuance of uses known to them which are in a considerable degree necessary to the continued usefulness of the land." *Id.* cmt. j. The Levitz sign is and has been visible and obvious since 1963. Louis and Morris Epstein knew or should have known about the sign when they divided the property in 1975.

An easement by has been created for the Levitz sign by implication and the easement has not been extinguished. *See Restatement of Property* §§ 497–509 (1944). Thus, Defendant will be permanently enjoined from removing the Levitz sign that is located on Defendant's Property.

 The doctrine of equitable estoppel also provides support for the grant of an injunction. Courts apply the doctrine of equitable estoppel to prevent a person from taking a position that is inconsistent with a position previously taken or acting differently than the manner in which that person induced another person by word or deed to expect. *Novelty Knitting Mills, Inc. v. Siskind*, 500 Pa. 432, 457 A.2d 502, 503 (1983). A court may enforce in equity "an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment." *Id.* There are two essential elements of equitable estoppel: inducement and justifiable reliance on that inducement. *Id.* Such inducement may be words or conduct and a person may exhibit reliance by an act

or forbearance "provided that a change in condition results causing disadvantage to the one induced." *Id.* The party who asserts equitable estoppel must prove the elements of estoppel by "clear, precise and unequivocal evidence." *Bolfson v. Cutaiar,* 460 Pa. 411, 333 A.2d 841, 844 (1975).

Thus, the first question is whether Kmart and its predecessors in title induced Levitz to believe that its freestanding sign would never be removed or relocated. In 1963, the lessor, DML Realty consented to Levitz erecting the sign. In 1975 Louis and Morris Epstein divided the property. There is nothing in the record to show that Morris Epstein ever said anything to Levitz with respect to Levitz's right to have the sign remain on his property. Mark Development Company, a successor in title to Morris Epstein, processed applications for a shopping center development on the property for a number of years, but never said anything to Levitz with respect to the removal or relocation of its sign. Defendant Kmart acquired the property on which the sign is located in November 1992, but never communicated with Levitz with respect to the sign. It was not until January 1993 that Levitz's store manager happened to see the notation on Kmart's land development plan that the developer would remove and relocate Levitz's sign. Kmart and its predecessors in title, by their "conduct" of silence over a long period of time, induced Levitz to believe that its freestanding sign would not be removed.

Next, did Levitz justifiably rely on that inducement to its detriment? The record shows that Levitz repainted the sign, refaced the sign, and repaved the area around the sign several times over the past thirty years, and paid the electric bills for the sign during that time. Levitz thus reasonably relied on the inducement that the sign would remain to its detriment. The doctrine of equitable estoppel is an additional reason to warrant the issuance of a permanent injunction against Kmart.

### D. *The Balance of the Equities*

■ Before a permanent injunction may be issued, the balance of the equities must weigh in favor of injunctive relief. With respect to the express easement for ingress, egress, and regress, Kmart has intentionally violated the easement and the express covenant against curbs, barriers, and other obstructions. Therefore, a balancing of the harms is inappropriate. Enforcement of the Declaration of Easements will result in a significant benefit to Plaintiff and Levitz. Thus, the balance of the equities weighs in favor of injunctive relief.

With respect to Levitz's sign, Kmart will be harmed by the grant of an injunction against removal of the sign and will need to revise its development plans at some expense. Levitz, however, will sustain great harm to its business without the sign. In consideration of the principles of equitable estoppel, Levitz is entitled to injunctive relief.

## III. Conclusions of Law

This Court has jurisdiction over the subject matter under 28 U.S.C. § 1332 and jurisdiction over the parties. Venue is proper in this district.

Plaintiff is the owner of the dominant estate in whose favor the easement was created pursuant to the Declaration of Easements. Defendant is the owner of the servient estate that is subject to the easement pursuant to the Declaration of Easements. Plaintiff–Intervenor is a tenant of Plaintiff. Under the Declaration of Easements, Plaintiff–Intervenor is a beneficiary of the easement created for right of way to Plaintiff's landlocked property.

The Declaration of Easements creates an express easement.

The Declaration of Easements constitutes a covenant running with the land in favor of Plaintiff and Plaintiff–Intervenor and is binding upon Defendant. The Declaration of Easements prohibits the installation of barriers, curbs, and other obstructions within the easement area.

The land development plan recorded by Defendant will alter, modify, and limit Plaintiff's easement for ingress, egress, and regress by providing for the erection of barriers, directional signs and signals, and lane demarcation lines, which will limit the free

and full use of the easement for ingress and egress to and from Plaintiff's Property to and from MacArthur Road. Defendant will substantially interfere with the easement.

As a result of Defendant's alteration, modification, and limitation of the easement and Defendant's violation of the Declaration of Easements, both Plaintiff and Plaintiff–Intervenor will suffer immediate and irreparable harm for which no adequate remedy at law exists.

The balance of harms weighs in favor of Plaintiff and Plaintiff–Intervenor.

Plaintiff and Plaintiff–Intervenor are entitled to a permanent injunction prohibiting Defendant from constructing and erecting any barriers, curbs, or other obstructions in the easement area, including traffic signs and signals and lane demarcation lines that would direct traffic away from Plaintiff's property, and further prohibiting Defendant from otherwise violating the terms of the Declaration of Easements in any manner.

An implied easement exists in favor of Plaintiff–Intervenor with respect to maintaining its freestanding sign in place on Defendant's property in its present location.

Defendant's land development plan, stating that the Levitz sign is to be relocated as directed by the developer, violates Plaintiff–Intervenor's implied easement and its right to maintain the sign in its present location. Defendant will violate the implied easement by relocating the Levitz sign.

As a result of Defendant's violation of the implied easement, Plaintiff–Intervenor will suffer immediate and irreparable harm for which no adequate remedy at law exists.

Defendant and its predecessors in title, by their silence, induced Plaintiff–Intervenor to believe its sign would not be removed.

Plaintiff–Intervenor justifiably relied upon that inducement to its detriment.

The doctrine of equitable estoppel applies to prevent Defendant from removing Plaintiff–Intervenor's sign.

Plaintiff–Intervenor is entitled to a permanent injunction prohibiting Defendant from removing or relocating the Levitz sign or otherwise interfering with or diminishing

Plaintiff–Intervenor's rights for the continued maintenance of the sign in place under its implied easement.

An appropriate order follows.

## ORDER

Upon consideration of the evidence at trial and the findings of fact, discussion, and conclusions of law, JUDGMENT IS ENTERED in favor of Plaintiff Louis W. Epstein Family Partnership and Plaintiff–Intervenor Levitz Furniture Corporation and against Defendant Kmart Corporation.

Defendant Kmart Corporation is PERMANENTLY ENJOINED from constructing or erecting any barriers, fences, curbs, or other obstructions within the easement area described in the Declaration of Easements between Louis W. Epstein and Myrtle Epstein, his wife, and Morris Epstein dated October 21, 1975 and recorded in the Lehigh County Recorder of Deeds Office in Miscellaneous Book Volume 391, page 697. Defendant is permanently enjoined from erecting any traffic signals and signs, and painting lane demarcation lines, in the easement area, that would direct traffic in respect to Plaintiff's property. Defendant is permanently enjoined from otherwise violating any of the terms of the Declaration of Easements.

Defendant Kmart Corporation is permanently enjoined from removing or relocating Levitz's freestanding sign located on Defendant's property or otherwise interfering with or diminishing the implied easement for the Levitz sign.

IT IS SO ORDERED.