**CHEMICAL BANK, Plaintiff,**

v.

**Martin DIPPOLITO and Michael Tiedeken, Defendants.**

No. 94–CV–4535.

United States District Court, E.D. Pennsylvania.

Aug. 28, 1995.

---

Richard A. O'Halloran, Adler & O'Halloran, P.C., Plymouth Meeting, PA, for plaintiff.

Joseph Gindhardt, Wissow, Odza, Steckiw & Gindhardt, Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Today we address Plaintiff Chemical Bank's motion for summary judgment in this mortgage foreclosure action. For the reasons stated below, the motion will be granted in part.

### I. BACKGROUND

Martin Dippolito and Michael Tiedeken, the defendants in this action, purchased real estate in Glenside, Pennsylvania ("the property") on April 28, 1989. Messrs. Dippolito and Tiedeken borrowed $106,000 at 12.75% interest from Bell Savings Bank PaSA ("Bell") in order to purchase the property, and agreed to repay the loan in installments of $1,175.61 per month beginning June 1, 1989, with a balloon payment due on May 1, 1994. As security for the loan, Messrs. Dippolito and Tiedeken executed a mortgage on the property in Bell's favor on April 28, 1989.[1] In May of 1992, Bell assigned the

---

1. The pertinent provisions of the bond and mortgage provide as follows:

Martin Dippolito and Michael Tiedeken (hereinafter called the Obligor), is [sic] held and firmly bound unto Bell Savings Bank a corpo-

bond and mortgage to Chemical Bank ("Chemical"), the plaintiff in this action. Mr. Dippolito died intestate on June 6, 1991, and subsequently Sandra J. Dippolito was named administratrix of Martin Dippolito's estate. After Mr. Dippolito's death, Mr. Tiedeken continued to make and Chemical continued to accept monthly payments up through February 28, 1995, but he did not make the May 1, 1994 balloon payment.

Chemical initiated this foreclosure action in July of 1994, alleging that Messrs. Tiedeken and Dippolito had defaulted on the mortgage.[2] In the spring of 1995, Chemical filed the instant motion for summary judgment and supporting affidavit, in which it asserts that as of April 30, 1995, it was entitled to judgment in the amount of $108,452.60, plus attorneys' fees and costs and interest accruing at 35.77 per day, as follows:

Unpaid principal balance ................. $101,012.74
Interest (through 1/23/95)................. $3,649.09
Late Charges .............. $801.50
Appraisal .................. $1,500.00
Environmental ............. $2,592.00
(Less suspense) ........... ($1,102.73)

In his response, Mr. Tiedeken invokes the defense of equitable estoppel, and argues that Chemical's acceptance of monthly payments after May 1, 1994 estops it from claiming his failure to make the balloon payment is a default on the mortgage. Moreover, Mr. Tiedeken argues that the late charges, appraisal and environmental charges, legal fees, and other costs claimed by Chemical are not supported by the mortgage agreement.

## II. DISCUSSION

### A. Summary Judgment Standard

This Court is authorized to award summary judgment "if the pleadings, depositions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, the Court's responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510–11). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)). Boiled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the

ration under the laws of Pennsylvania (hereinafter called the Obligee), in the penal sum of [$212,000.00], Conditioned for payment of the principal sum of [$106,000.00].... The Condition of this Obligation is such, That is the Obligor shall pay to the Obligee: [$1,175.61] on June 1, 1989 and the first day of each and every month hereafter ... (b) (THIS MORTGAGE TOGETHER WITH ALL INTEREST IS DUE per annum on the unpaid balance of the principal sum, AND PAYABLE ON MAY 1, 1994).... If any "Monthly Payment" is not paid in full for the space of thirty days after it falls due, or performance of any one or more of the Obligations contained herein, then the entire unpaid balance of the principal sum shall, at the option of the Obligee and without notice, become immediately due and payable with all accrued interest thereon with premium, late charges, costs and all other sums that may have been advanced to the Obligor or paid by the Obligee to protect the security of the Mortgage accompanying this Obligation, together with an attorney's commission of five per cent on the original principal sum ... besides all costs of suit, may each or all be enforced and recovered from time to time or at once, notwithstanding anything to the contrary herein.

Moreover, the mortgage agreement provides for joint and several liability.

2. In an order dated January 31, 1995, this Court approved a stipulation substituting Sandra Dippolito for Mr. Dippolito as a defendant in this action. When Ms. Dippolito did not file a response to Chemical Bank's complaint, Chemical Bank moved for a default judgment. An order of default judgment was entered against the Dippolito estate on March 27, 1995, as amended on April 11, 1995 in the amount of $116,957.56 plus interest at a rate of $35.95 per day until the date of the sale of the property.

evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. at 2512.

### B. *Mortgage Foreclosure*

 In a mortgage foreclosure action, the plaintiff must show the existence of an obligation secured by a mortgage, and a default on that obligation. *In re Kelly*, 150 B.R. 121, 122 (Bankr.M.D.Pa.1992); *United States v. Freidus*, 769 F.Supp. 1266, 1277 (S.D.N.Y.1991). Mr. Tiedeken does not dispute the validity of the mortgage or his obligation under it. Further, he concedes that he failed to make the balloon payment by the May 1, 1994 deadline, and that he has failed to cure his default since that time by remitting the unpaid principal balance. According to the provisions of the agreement, therefore, Mr. Tiedeken has defaulted on his obligation under the mortgage. Thus, Chemical is entitled to judgment at this stage unless Mr. Tiedeken can raise a disputed issue of material fact regarding his defense. *Freidus*, 769 F.Supp. at 1277. Accordingly, we turn to address the merits of Mr. Tiedeken's equitable estoppel defense.

### C. *Equitable Estoppel*

 As noted above, Mr. Tiedeken invokes the doctrine of equitable estoppel in an attempt to fend off Chemical's request for summary judgment. Specifically, Mr. Tiedeken argues that by accepting monthly payments after May 1, 1994, Chemical induced Mr. Tiedeken to believe that it would not demand the balloon payment. Thus, Mr. Tiedeken relied on the purported inducement and continued to make the payments, to his detriment. Under Pennsylvania law, the doctrine of equitable estoppel is applied to "prevent a person from taking a position that is inconsistent with a position previously taken or acting differently than the manner in which that person induced another person by word or deed to expect." *Louis W. Epstein Family Partnership v. Kmart Corp.*, 828 F.Supp. 328, 343 (E.D.Pa.1993), *rev'd on other grounds*, 13 F.3d 762 (3d Cir.1994). Thus, the elements of equitable estoppel are (1) an inducement, whether by act, representation, or silence when one ought to speak, that causes one to believe the existence of certain facts; (2) justifiable reliance on that inducement; and (3) prejudice to the one who relies if the inducer is permitted to deny the existence of such facts. *Zivari v. Willis*, 416 Pa.Super. 432, 611 A.2d 293, 295 (1992) (quoting *Northwestern Nat'l Bank v. Commonwealth*, 345 Pa. 192, 196–97, 27 A.2d 20, 23 (1942)). To constitute inducement, a person must commit an act or forbearance that causes a change in condition resulting in disadvantage to the one induced. *Novelty Knitting Mills, Inc. v. Siskind*, 500 Pa. 432, 457 A.2d 502, 503 (1983). These elements must be established by the party asserting equitable estoppel by "clear, precise and unequivocal evidence." *Kmart*, 828 F.Supp. at 344; *Blofsen v. Cutaiar*, 460 Pa. 411, 333 A.2d 841, 844 (1975).

Upon consideration of the evidence in the light most favorable to Mr. Tiedeken, we conclude that the facts presented do not warrant the invocation of the doctrine of equitable estoppel. First, Mr. Tiedeken has failed to offer any evidence to suggest that Chemical intended not to demand the balloon payment. Indeed, there has been no suggestion that Chemical made some affirmative representation to that effect. To the contrary, Chemical filed this foreclosure action against Mr. Tiedeken in July of 1994, and maintained it even as it accepted the monthly payments. Thus, by persisting in the prosecution of this action, Chemical signaled its intention to assert the balloon payment provision, not to forego it. To the extent that Mr. Tiedeken relied on Chemical's acceptance of the monthly payments as indicative of its intent not to assert the balloon provision, therefore, such reliance was unjustified.

Finally, we cannot identify any harm or prejudice incurred by Mr. Tiedeken as a result of Chemical's acceptance of the monthly payments, since those payments will be applied in his favor to the amount he owes Chemical. Accordingly, we find that Mr. Tiedeken has failed to raise disputed factual issues which could give rise to an estoppel defense. Moreover, there is no dispute that he has failed to meet his obligations under the mortgage agreement. As a result, we must enter an award of summary judgment in favor of Chemical as to liability. We turn

now to determine the extent of Mr. Tiedeken's liability to Chemical under the mortgage agreement.

### D. *Amount Due*

The parties dispute the extent of Mr. Tiedeken's liability. In support of its motion, Chemical has submitted an affidavit, which outlines the costs allegedly due it, which we have set forth above. Mr. Tiedeken raises a number of objections, including an argument that he is not subject to late charges, that the appraisal and environmental costs are not supported by the agreement, and that the amount requested does not reflect payments that he made. Accordingly, we will order Chemical to submit, within fourteen days of the attached order's entry, an updated affidavit detailing the extent of Mr. Tiedeken's liability and a brief memorandum in support of the various costs for which it seeks reimbursement. Mr. Tiedeken shall then have fourteen days from the date of service to file a memorandum in opposition.

### III. *CONCLUSION*

For the reasons set forth above, Plaintiff's motion for summary judgment is granted on the issue of Mr. Tiedeken's liability, but denied on the issue of damages, pending further briefing.